STATE of Tennessee, Plaintiff-Appellee,

v.

Robert D. FRANCIS,
Defendant-Appellant.

Supreme Court of Tennessee,
at Jackson.

April 2, 1984.

William M. Leech, Jr., Atty. Gen. & Reporter, Raymond S. Leathers, Asst. Atty. Gen., Nashville, of counsel, for plaintiff-appellee.

Eugene D. Lyne, Leland Carter, Memphis, for defendant-appellant.

## OPINION

DROWOTA, Justice.

In this appeal from a conviction of sexual battery, defendant contends, *inter alia*, that the State's use of the missing witness inference during closing argument was prejudicial error. We granted defendant's Rule 11 application for permission to appeal in order to determine whether the State's comment on the failure of the defendant to call his six-year-old daughter as a witness was a proper subject matter of argument. We hold that the trial court erred in allowing the State to make this argument before the jury. We reverse the conviction and remand the case for a new trial.

This case arose in 1981 when a Shelby County grand jury returned three indictments against the defendant, Robert D. Francis, for sexual battery of three girls under the age of thirteen. The defendant, a 43 year-old father of two, was alleged to have committed the unlawful acts upon the three neighborhood children while they played in his back yard during a period between May 1, 1980 and August 26, 1981. The trial judge granted the State's motion to consolidate the three indictments pursuant to Rule 13 of the Tennessee Rules of Criminal Procedure. At trial a jury found the defendant guilty of sexual battery as to each of the indictments. The defendant was sentenced to a total of four to seven years imprisonment in the state penitentiary. The defendant's motion for a new trial and a petition for a suspended sentence

were both denied. The Court of Criminal Appeals affirmed the conviction.

During the summer of 1980 and 1981, Kelli Dobry, her sister Denise, and Cassandra Rene Cobb visited the defendant's home several times each week to play with his two children.[1] The children usually played in the defendant's back yard where a gym set and metal shed were located. The defendant, who worked for the Memphis fire department, often played with the children during the days when he was off from work.

Kelli Dobry testified at trial that the defendant touched her buttocks and breasts. These acts took place on several occasions and usually occurred in the metal shed. Additionally, she stated the defendant exposed himself and touched his private parts in her presence. The incidents complained of took place in the summer of 1980 and 1981.

The testimony of Denise Dobry and Cassandra Rene Cobb was similar to Kelli's account. Denise Dobry testified that the defendant touched her private parts and exposed himself in her presence on several occasions. Cassandra Rene Cobb testified that the defendant placed his hand in her vagina. A pediatrician, who had treated Cassandra for several years, testified that she examined the child on August 27, 1981 and found that Cassandra's hymenal ring had been torn. While the injury could have been caused in numerous other ways, it was consistent with the insertion of an object like a finger into the vagina.

The children did not immediately notify their parents of these incidents because they were afraid of how their parents would react. On August 26, 1981, Kimberly Scott, a thirteen year old who also lived in the neighborhood, placed a letter, which she had typed, in the Dobry's mailbox. After receiving the letter, the parents of these children asked them about the defendant's conduct and the children told them what had happened. As a result of this discussion, the parents went to the police.

While the defendant denied these charges, there was considerable testimony from the three girls that the defendant's children were present when the acts took place. The defendant's son, Robert Donald Francis, Jr., who was eight years old at trial, testified that he had never seen his father expose himself in his presence or in the presence of other children. Donald also stated he had never seen his father touch any of the girls under their shorts.

Heather Francis, who was six years old at the time of the trial and was four years old when the incidents were said to have taken place, was not called as a witness at trial. On cross-examination by the State, Helen Francis, the defendant's wife, testified that she and her husband were in the process of training Heather to tell the truth and not to tell lies. Helen Francis initially testified she did not know whether her daughter knew the difference between truth and untruth. She went on to say, however, that while Heather was "very immature," she thought Heather knew the difference between telling the truth and telling lies. The State avers that the "mother's testimony did not conclusively establish that [Heather] did not know the difference between truth and untruth." Mrs. Francis further testified that she had never seen her husband mistreat any of the children.

In its closing argument, the State called the jury's attention to the fact that the appellant had failed to call his six-year-old daughter as a witness. In pertinent part, the argument was as follows:

MR. NEWSON: The children [Don and Heather] were present, did they say that all the children were standing there and looking at us when this was occurring? Specifically, Denise said that the defendant and Heather were in the shed when this happened. And, I asked—I asked Mrs. Francis about Heather. She's

---

1. At the time of the trial, Kelli Dobry, Denise Dobry and Cassandra Rene Cobb were respectively 13, 10 and 11 years old. The defendant's children, Don and Heather, were respectively 8 and 6 years old at the time of trial, in March of 1982.

[Heather] been up here a few days, she's sitting here listening to me now, and that's regrettable. But she can't tell the difference between truth and untruth. That's what they said. That's why they didn't put her on the stand. Wonder what she would have told us?

Mr. Lyne (appellant's counsel): Your honor, ... I want to object. That's improper argument as to—

MR. NEWSON: That is not, Your honor. (Simultaneous speech).

THE COURT: Well, as I said before when you were arguing, these ladies and gentlemen know arguments are not evidence, so let's just go ahead ....

MR. NEWSON: Is it not in the evidence that that little girl was present with Denise when her father did this? It is in evidence. And if it's in evidence it's proper for me to argue it. Why didn't she take that witness stand? Maybe they were afraid she might tell the truth. Maybe. It can't be to keep her from having to hear all of this because she's sitting here listening to all of it right now ....

The defendant contends that the trial court erred in allowing the State to make this argument before the jury, and that this error substantially affected the verdict. The Court of Criminal Appeals concluded there was no error, stating that a proper foundation for the argument was laid. Specifically, the appellate court noted "there was evidence that the daughter had knowledge of material facts; that a relationship existed that would naturally incline the witness to favor the defendant; and that the daughter was in the courtroom and was therefore available."

2. See D. Paine, *Tennessee Law of Evidence*, § 46, p. 43 (1974), § 46, p. 31 (Cum.Supp.1981), and cases cited therein. For a collection of cases from other state and federal courts, see Annot., 5 A.L.R.2d 893 (1949).

3. The inference is not appropriate where the evidence shows, for example, that the absent witness is truly unavailable, his testimony would be immaterial, or the witness is as likely to be favorable to one party as another. For

## The Missing Witness Rule

It is well-established that a prosecutor may comment upon the failure of a defendant to call an available and material witness whose testimony would ordinarily be expected to favor the defendant.[2] The United States Supreme Court recognized this common law rule in *Graves v. United States*, 150 U.S. 118, 14 S.Ct. 40, 37 L.Ed. 1021 (1893), stating that "if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would have been unfavorable." 150 U.S. at 121, 14 S.Ct. at 41. Similarly, this Court has held that a party may comment about an absent witness when the evidence shows that "[1] the witness had knowledge of material facts, [2] that a relationship exists between the witness and the party that would naturally incline the witness to favor the party and [3] that the missing witness was available to the process of the Court for trial." *Delk v. State*, 590 S.W.2d 435, 440 (Tenn.1979). While the *Graves* Court spoke of the missing witness rule in terms of creating a "presumption," the rule is now generally characterized as authorizing a permissive inference. *State v. Jones*, 598 S.W.2d 209, 224 (Tenn.1980); *State v. Sanderson*, 550 S.W.2d 236, 238 (Tenn.1977); *National Life & Accident Ins. Co. v. Eddings*, 188 Tenn. 512, 518, 221 S.W.2d 695 (1949); *See* C. McCormick, *McCormick's Handbook of the Law of Evidence* § 272, at 658 (2d ed. 1972). The mere fact that a party fails to produce a particular person who may have some knowledge of the facts involved does not justify application of the inference against him.[3] However, when it can be

cases holding the inference to be inappropriate, see, e.g., *Poor Sisters of St. Francis v. Long*, 190 Tenn. 434, 447, 230 S.W.2d 659 (1950) (witness outside of state and beyond the jurisdiction of the court and it was not possible to compel her attendance as a witness); *Conboy v. State*, 2 Tenn.Cr.App. 535, 548, 455 S.W.2d 605 (1970) (witness under care of a physician and unable to attend court, 80 girls attending slumber party could not testify to anything other than cumulative facts); *Henderson v. New York Life Ins. Co.*,

said "with reasonable assurance that it would have been natural for a party to have called the absent witness but for some apprehension about his testimony," an inference may be drawn by the jury that the testimony would have been unfavorable. *Burgess v. United States*, 440 F.2d 226, 237 (D.C.Cir.1970). Due to the potentially critical effect of the missing witness rule, the *Delk* requirements set out above are to be strictly construed, particularly when the rights of a criminal defendant may be affected.

 The reason for this caution is that there are several dangers inherent in the operation of the missing witness rule. The adverse inference may add a "fictitious weight to one side of the case, for example, by giving the missing witness an undeserved significance." *Dent v. State*, 404 A.2d 165, 171 (D.C.App.1979). Repeated arguments about an absent witness may also create a false impression of the witness' value in the eyes of the jury. *Id.* Furthermore, since the missing witness inference is usually invoked in closing argument the opposing party is foreclosed from offering the jury any evidence regarding the decision not to produce the witness. *Id.* Thus, in determining whether to permit the application of the missing witness inference, the trial judge must make an informed decision as to the absent witness' availability to the process of the court, the witness' capability to elucidate the transaction at issue, and whether a relationship exists between the witness and the party that would naturally incline the witness to favor the party.

194 Tenn. 46, 56, 250 S.W.2d 11 (1952) (doctors not under control of plaintiff and were as available to defendant as they were to the plaintiff); *see also Brown v. United States*, 414 F.2d 1165, 1166–67, n. 2 (D.C.Cir.1969) (witness was unimportant); *James v. State*, 223 Ga. 677, 157 S.E.2d 471 (1967) (absent witness' testimony would be privileged); *Knox v. State*, 112 Ga. 373, 37 S.E. 416 (1900) (no evidence that witness was competent) *State v. DePaolo*, 5 N.J. 1, 73 A.2d 564, 574 (1950) (absent witness was biased against the party).

**4.** Among the courts which have addressed this aspect of the missing witness rule, there is a

 By implication, the missing witness rule is restricted to witnesses who are competent to testify.[4] For the rule rests on the notion that the absent witness, if produced, would have made an intelligent statement about what was observed. The Supreme Court decision in *Graves v. United States, supra,* supports this conclusion. In *Graves*, the government in its closing argument commented upon the defendant's failure to produce his wife at trial. Under an existing common law rule, however, a wife was considered incompetent to testify either against or in behalf of her husband. The Court held the argument was prejudicial error, stating that:

> Permission to make this comment was equivalent to saying to the jury that it was a circumstance against the accused that he had failed to produce his wife for identification, when, knowing that she could not be a witness, he was under no obligation to do so. The jury would be likely to draw the inference that she was prevented from testifying for her husband because her evidence might be damaging.

*Graves v. United States, supra,* 150 U.S. at 121, 14 S.Ct. at 41. The concerns raised by the Court in *Graves* are particularly relevant in the instant case. There is no evidence in the record that the defendant's six-year-old daughter was competent to testify. Nor was there any proof that her testimony would not be merely cumulative. In either case the defendant would not be obligated to call his daughter as a witness. Accordingly, we reject the State's conten-

wide agreement that the rule requires the absent witness to be competent to testify before any inference may be drawn by the jury. *See, e.g., Bisno v. United States*, 299 F.2d 711, 721 (9th Cir.1961); *Cote v. Palmer*, 127 Conn. 321, 16 A.2d 595 (1940); *Kindell v. State*, 413 So.2d 1283, 1288 (Fla.App.1982) (Pearson, J., concurring); *Contreras v. State*, 242 Ga. 369, 249 S.E.2d 256 (1978); *Knox v. State*, 112 Ga. 373, 37 S.E. 416 (1900); *Floyd v. Colonial Stores, Inc.,* 121 Ga.App. 852, 176 S.E.2d 111 (1970); *Byington v. State*, 106 Ga.App. 247, 126 S.E.2d 698 (1969).

tion that a proper foundation for the argument was laid.[5] For it must appear from the evidence that the absent witness was competent to testify before any inference may be asserted against the noncalling party. Without this requirement, the missing witness rule itself is absent of any meaning or reasonable purpose.

■ Ordinarily, this factual determination will not present a problem because it is presumed (prima facie) that a person fourteen years of age or older is competent to testify. *Ball v. State*, 188 Tenn. 255, 219 S.W.2d 166 (1949); *Higgens v. Higgens*, 629 S.W.2d 20 (Tenn.App.1981); *See also* D. Paine, *Tennessee Law of Evidence*, § 149, p. 169 (1974). However, where the witness is a child under the age of fourteen, as in the instant case, there is a presumption that the child is incompetent. *Ball v. State*, 188 Tenn. at 258, 219 S.W.2d at 167. While this presumption is rebuttable,[6] a finding of competency cannot be made in a vacuum. There must be evidence to the effect that the witness possesses the requisite testimonial capacities and understands the nature and obligation of the oath. *See State v. Williams*, 598 S.W.2d 830 (Tenn. Cr.App.1980); *State v. Nelson*, 603 S.W.2d 158 (Tenn.Cr.App.1980).

■ In the instant case, the State failed to present any evidence establishing that Heather Francis was competent to testify. At best, the testimony of Helen Francis left the issue in doubt. While Heather may have had some knowledge of the acts in question and been available to the process of the court, the threshold issue whether she had the requisite mental capacity to truthfully and accurately relate what she observed was not resolved. On this point, the reasoning of the Connecticut Supreme Court in *Cote v. Palmer*, 127 Conn. 321, 16 A.2d 595 (1940), is particularly appropriate. In *Palmer*, a missing witness instruction

was requested when the defendant failed to call his 8-year-old daughter as a witness. The *Palmer* court held the requested instruction was properly denied, concluding that:

> any testimony she might give would naturally be subject to the infirmities incident to her youth. The trial court lacked such knowledge as to her qualification and credibility as a witness as would have resulted from her being called to the stand and it might well have seemed that under the circumstances the requested charge would have unfairly implied testimonial qualifications and abilities which she might not in fact possess.

*Id.* at 332, 16 A.2d at 600.

■ Since there is no evidence showing the defendant's daughter was competent to testify, the State's argument to the jury that an inference could be drawn from defendant's failure to call her as a witness was improper. It should be noted that when a party intends to argue the missing witness inference, they should inform the court at the earliest opportunity so that an evidentiary hearing, if necessary, can be held to establish whether the requirements for laying a proper foundation under *Delk* have been met. An advance ruling from the trial court on the permissibility of arguing before a jury the adverse inference to be drawn from the absence of a witness, will ultimately save judicial time and the expense of a retrial.

*Harmless or Prejudicial Error*

■ Upon concluding that the trial court erred in allowing the State to make use of the missing witness, we must now determine whether the error resulted in prejudice to the defendant. *Harrington v. State*, 215 Tenn. 338, 340, 385 S.W.2d 758 (1965). The court, in *Judge v. State*, 539 S.W.2d 340 (Tenn.Cr.App.1976), laid out

---

5. The State argues that "the requirements for laying a proper foundation prior to commenting on the failure to call a particular witness do not include a determination concerning the competency of the witness who did not testify." Although *Delk* did not specifically set out competency as a predicate for comment on a missing

witness, it was certainly implied and contemplated in the *Delk* decision.

6. *See e.g., Franks v. State*, 187 Tenn. 174, 213 S.W.2d 105 (1948) (no error in allowing 7-year-old to testify).

five factors to be considered in making this determination:

1. The conduct complained of viewed in context and in light of the facts and circumstances of the case.
2. The curative measures undertaken by the court and the prosecution.
3. The intent of the prosecution in making the improper statement.
4. The cumulative effect of the improper conduct and any other errors in the record.
5. The relative strength or weakness of the case.

*Id.* at 344.

While the record reveals that the prosecutor's comments were an isolated occurrence in the heat of the trial, the comments were not corrected by the trial judge who should have instructed the jury to disregard the argument. Instead, after defendant's objection was implicitly denied, the prosecutor went ahead and suggested Heather Francis' testimony would have revealed the "truth." While this Court has recognized that wide latitude must be given counsel in arguing their case to the jury, the prosecutor's comment as to what the missing testimony would have been is clearly outside of the evidence and inappropriate. More importantly, however, is the fact that the defendant's credibility was a crucial issue and the missing witness inference directly affected that part of the case. Where the non-calling party's credibility is a crucial issue in a case and the "missing witness inference directly affects that credibility, an improper argument or instruction will ordinarily require reversal." *Thomas v. United States,* 447 A.2d 52, 59 (D.C.App. 1982).

The Supreme Court in *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), stated, if one cannot say:

> with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.

The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error, it is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

*Id.* at 765, 66 S.Ct. at 1248.

As Chief Justice Fones stated in *Delk,* "the line between harmless and prejudicial error is in direct proportion to the degree of the margin by which the proof exceeds the standard required to convict, beyond a reasonable doubt." *Delk v. State, supra,* at 442. Our review of this record convinces us that this was an extremely close case and we cannot say beyond a reasonable doubt that the error was harmless. Since the trial court erred in permitting the State to utilize the missing witness inference which may have substantially damaged defendant's credibility with the jury, we hold that the conviction must be reversed and the case remanded for a new trial.

FONES, C.J., and COOPER, BROCK and HARBISON, JJ., concur.