# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### February 2000 Session

## STATE OF TENNESSEE v. GEORGE O. MEARS

### Appeal from the Circuit Court for Cannon County
### No. M98-48     Don Ash, Judge

### No. M1999-01229-CCA-R3-CD - Filed September 29, 2000

The appellant, George O. Mears, appeals his conviction in the Cannon County Circuit Court of driving under the influence of an intoxicant, second offense. Pursuant to the appellant's conviction, the trial court imposed a sentence of eleven months and twenty-nine days incarceration in the Cannon County Jail, suspending all but six months of the appellant's sentence and placing him on probation. On appeal, the appellant presents the following issues for our review: (1) whether the trial court erred in permitting the prosecutor to comment to the jury about the appellant's failure to call a witness and in providing a "missing witness" instruction to the jury; (2) whether the evidence adduced at the appellant's trial is sufficient to support the jury's verdict of guilt; and (3) whether the trial court erred in sentencing the appellant. Following a review of the record and the parties' briefs, we reverse the judgment of the trial court and remand this case for a new trial.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Reversed and Remanded.

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, J.J., joined.

Larry B. Stanley, Jr., McMinnville, Tennessee, for the appellant, George O. Mears.

Paul G. Summers, Attorney General and Reporter, Todd R. Kelley, Assistant Attorney General, and David L. Puckett, Assistant Attorney General, for the appellee, State of Tennessee.

## OPINION

The appellant, George O. Mears, was convicted by a jury in the Cannon County Circuit Court on February 11, 1999, of driving under the influence of an intoxicant (DUI) in violation of Tenn. Code Ann. § 55-10-401(a)(1) (1998). Immediately thereafter, in a separate proceeding, the trial court found that the appellant was subject to an enhanced penalty as a repeat, second-time offender. The trial court then sentenced the appellant to eleven months and twenty-nine days incarceration in the Cannon County Jail. The court ordered the appellant to serve six months of his sentence in confinement and suspended the remainder, placing the appellant on probation. On appeal, the appellant asserts the following grounds for relief: (1) the trial court erred in permitting the prosecutor to comment to the jury about the appellant's failure to call a witness and in providing

a missing witness instruction to the jury; (2) the evidence adduced by the State is insufficient to support the jury's verdict of guilt; and (3) the trial court erred in sentencing the appellant. Following a review of the record and the parties' briefs, we agree with the appellant's first contention and, accordingly, reverse the judgment of the trial court. Because we remand this case to the trial court for a new trial, the appellant's issues concerning the sufficiency of the evidence and sentencing are pretermitted. See, e.g., State v. Dutton, 896 S.W.2d 114, 119 (Tenn. 1995).

## I. Factual Background

The appellant's conviction of DUI, second offense, arose from a single vehicle accident that occurred during the night of December 24, 1997, on Highway 53 in Cannon County.[1] At the appellant's jury trial, the State established that John R. Bratton, a deputy employed by the Cannon County Sheriff's Department, was dispatched to the scene of the accident at approximately 10:00 p.m. When the deputy arrived, he observed the appellant's truck lying in a ditch on the side of the road and further observed that the truck had sustained significant damage. No one was present at the scene of the accident, but an examination of the interior of the truck revealed a half-gallon bottle of vodka, which was one-third to one-half empty. At this point, Deputy Bratton decided to search for the driver of the truck.

The deputy drove approximately one-half of a mile down the highway in search of the driver and finally observed the appellant walking down the driveway of an adjacent house. The deputy drove his patrol car into the driveway, whereupon the appellant turned around and began to walk in the opposite direction. The appellant halted at the deputy's command.

As the deputy approached the appellant on foot, he noticed that the appellant was armed and that he was "weaving . . . back and forth." Accordingly, the deputy disarmed the appellant and began to lead him toward the patrol car. The appellant expressed some physical discomfort, and the deputy inquired, "Did you hurt yourself when you drove off the road?" The appellant responded, "Yes, I need to go to the hospital." Upon further inquiry, the appellant clarified that he owned the wrecked truck.

As the deputy questioned the appellant, he smelled a strong odor of alcohol emanating from the appellant and further observed that the appellant's speech was slurred, and the appellant was unsteady on his feet. Accordingly, the deputy asked if the appellant would consent to a blood alcohol test, but the appellant refused consent. The deputy did not conduct field sobriety tests due

---

[1] On June 23, 1999, appellant's counsel filed a Statement of the Evidence pursuant to Tenn. R. App. P. 24(c). On July 2, 1999, the State in turn filed an objection to that portion of the Statement of the Evidence concerning the sentencing hearing. The State asserted that a court reporter was present during the sentencing hearing and that a verbatim transcript of the hearing should be made a part of the record. On July 21, 1999, the appellant included a verbatim transcript of the sentencing hearing in the record. The State did not otherwise object to the appellant's Statement of the Evidence.

We note that the trial judge approved neither the Statement of the Evidence nor the transcript of the sentencing hearing. Nevertheless, the Statement and the transcript are deemed approved when the trial judge takes no action within 30 days after the expiration of the period for filing objections. Tenn. R. App. P. 24(f).

to the appellant's injury. Instead, the deputy transported the appellant to the Columbia Stones River Hospital in Woodbury, Tennessee. At the appellant's trial, the deputy opined that the appellant was, indeed, intoxicated on the night in question.

At the hospital, Dr. Leon L. Ruehland, an emergency room physician, examined the appellant. According to Dr. Ruehland, the appellant was suffering from a dislocated shoulder. Moreover, the doctor noticed that a strong odor of alcohol was emanating from the appellant and that the appellant's speech was slurred. Dr. Ruehland administered a "Horizontal Gaze Nystagmus Test," a test apparently intended to detect the effects of alcohol upon the eyes. According to Dr. Reuhland, he has undergone "extensive training in examining people for the presence of Nystagmus." On the basis of this test, the doctor concluded that the appellant was under the influence of alcohol.

Dr. Ruehland also requested permission to perform a blood alcohol test and a drug screen upon the appellant. The appellant again refused consent. Additionally, while still at the hospital, the appellant informed Deputy Bratton, "I was not driving and you cannot prove that I was." When Deputy Bratton inquired who was driving, the appellant responded that he did not know. No one other than the appellant was treated that night in the Columbia Stones River emergency room in connection with the accident.

The appellant testified on his own behalf at trial. He again conceded ownership of the wrecked truck and also conceded that he had bought the half-gallon bottle of vodka earlier on the day of the accident. However, he asserted that he was not the driver of the truck on the night of the accident and, in any event, was not intoxicated.

The appellant recounted that, in the early afternoon of December 24, 1997, he bought the bottle of vodka and drove to his home near McMinnville, arriving home at approximately 1:00 p.m. or 2:00 p.m. The appellant then drank for approximately one hour. Subsequently, Bill Jones, a brick mason who had been employed by the appellant for several days, arrived at the appellant's home. The appellant asked Mr. Jones to drive him in his truck to the home of his brother-in-law, Landon Davis. Mr. Jones agreed, leaving his own vehicle parked in the appellant's driveway.

The appellant and Mr. Jones arrived at Mr. Davis' home at approximately 4:30 p.m. While the appellant visited his brother-in-law, Mr. Jones remained in the truck and slept. The appellant and Mr. Jones finally departed Mr. Davis' home at approximately 9:00 p.m. or 10:00 p.m. Mr. Jones was again driving the appellant's truck. En route to the appellant's home, Mr. Jones lost control of the vehicle and drove off the road into a ditch. The appellant hit his head against the dashboard and momentarily lost consciousness. When the appellant regained consciousness, Mr. Jones had disappeared. The appellant noticed that his shoulder was injured and left the truck in order to obtain assistance.

Several days following the accident, the appellant visited Mr. Jones' residence but discovered that Mr. Jones had moved. The appellant was unable to discover Mr. Jones' current location. The appellant explained that, although he had employed Mr. Jones for a short period of time, he did not have Mr. Jones' social security number or date of birth. The appellant conceded that

he never informed either the police or the district attorney general about Mr. Jones and his involvement in the accident or requested assistance from law enforcement authorities in locating Mr. Jones. The appellant also admitted that he never attempted to subpoena Mr. Jones.

In defense, the appellant also presented the testimony of his brother-in-law. Mr. Davis testified that, on December 24, 1997, the appellant visited his home at approximately 4:00 p.m., departing at approximately 7:00 p.m. or 8:00 p.m. According to Mr. Davis, the appellant was not intoxicated at the time of his departure. Moreover, Mr. Davis asserted that, as the appellant departed his residence, he observed someone other than the appellant driving the appellant's truck. The appellant's wife, Amy Mears, also testified that, on the night in question, she returned home at approximately 9:30 p.m. or 9:45 p.m. and noticed a strange car in the driveway. Later that evening, at approximately 10:15 p.m. or 10:30 p.m., she heard the car's engine start in the driveway. The following morning, the car was gone.

## II. Analysis

The appellant contends that the trial court erred in permitting the prosecutor to comment to the jury concerning the failure of the appellant to call Mr. Jones as a witness and in providing a missing witness instruction to the jury. According to the Statement of the Evidence, filed by the appellant pursuant to Tenn. R. App. P. 24(c),

> [a]t the conclusion of the evidence, the Court presented the proposed jury instructions. The Court, sua sponte, included in the jury instructions the Missing Witness Rule and indicated to the jury that (1) the missing witness, Bill Jones, had knowledge of material facts, (2) a relationship existed between the witness and the party that would naturally incline the witness to favor the party, and (3) the missing witness was available to the process of the Court. The Court then instructed the jury that it could presume from the Defendant's failure to call Mr. Jones as a witness that he would not have testified favorably to Mr. Mears. The defendant objected to this charge, but the court overruled the objection and so instructed the jury. The prosecution also commented in closing regarding the missing witness, indicating that the jury could infer that he would have testified against the Defendant if he had been called as a witness.

Under well-established Tennessee law, if a defendant has it "peculiarly within his power" to produce a material witness and fails to call the witness at trial, the State is entitled to argue and is entitled to a jury instruction concerning a permissive inference that the witness' testimony, if produced, would not favor the defendant's contentions. See State v. Middlebrooks, 840 S.W.2d 317, 334 (Tenn. 1992). See also State v. Francis, 669 S.W.2d 85, 88 (Tenn. 1984); State v. Philpott, 882 S.W.2d 394, 407 (Tenn. Crim. App. 1994). However, before the State can invoke the missing witness rule, the record must demonstrate that (1) the witness had knowledge of material facts; (2) a relationship existed between the witness and the defendant that would naturally incline the witness to favor the defendant; and (3) the missing witness was available to the process of the court for trial. Delk v. State, 590 S.W.2d 435, 440 (Tenn. 1979). See also State v. Bigbee, 885 S.W.2d 797, 804

(Tenn. 1994). Indeed, when the State intends to argue the missing witness inference, the State should inform the court at the earliest opportunity so that an evidentiary hearing, if necessary, can be held to establish whether the prerequisites set forth in <u>Delk</u> have been met. <u>Francis</u>, 669 S.W.2d at 90; <u>Philpott</u>, 882 S.W.2d at 407 n. 27. In any event, the burden is upon the proponent of the missing witness rule to establish the <u>Delk</u> prerequisites. <u>State v. Thompson</u>, 768 S.W.2d 239, 250 (Tenn. 1989). Moreover, "[d]ue to the potentially critical effect of the missing witness rule, the <u>Delk</u> requirements are to be strictly construed, particularly when the rights of a criminal defendant may be affected." <u>Francis</u>, 669 S.W.2d at 89.

In this case, the trial court apparently anticipated the State's invocation of the rule in submitting proposed jury instructions to the parties. The record, however, does not support the trial court's determination that the <u>Delk</u> prerequisites were satisfied. While Mr. Jones certainly had knowledge of material facts, the record before us does not reflect a relationship between Mr. Jones and the appellant that would naturally incline Mr. Jones to favor the appellant. We acknowledge that, under certain circumstances, an employment relationship may warrant invocation of the missing witness rule. <u>Cf.</u> <u>Thomas v. United States</u>, 447 A.2d 52 (D.C. App. 1982)("[a] finding of peculiar availability may be justified where circumstances suggest a potential bias in favor of one party, e.g., where he is employed by that party"). <u>Cf. also</u> <u>State v. Green</u>, No. 02C01-9711-CC-00429, 1999 WL 632235, at *3 (Tenn. Crim. App. at Jackson, August 20, 1999)(the trial court did not err in declining the defendant's request for a missing witness instruction when the missing witness did not have an employment relationship with the State). However, the record in this case reflects that Mr. Jones's employment by the appellant was of extremely short duration. Aside from the employment relationship, the record at most suggests a casual acquaintance between the two men. Moreover, we agree with the appellant that, under the circumstances of this case, it is likely that Mr. Jones' interests were directly adverse to the appellant's and would have deterred any testimony by Mr. Jones that he was the driver of the appellant's truck on the night in question. <u>State v. Havner</u>, No. 01C01-9806-CC-00275, 1999 WL 436834, at *3 (Tenn. Crim. App. at Nashville, June 30, 1999), <u>perm. to appeal denied</u>, (Tenn. 1999). Finally, the record before us does not contain any information concerning the missing witness' location. "We cannot assume that the witness would have been available to the process of the trial court." <u>Id.</u>

Having concluded that the trial court erred, the State is entitled to harmless error analysis. Tenn. R. Crim. P. 52(a); Tenn. R. App. P. 36(b). In this case, the result of the appellant's trial turned upon the jury's assessment of the appellant's credibility on the very subject of Mr. Jones' hypothetical testimony. "Where the non-calling party's credibility is a crucial issue in a case and the 'missing witness inference directly affects that credibility, an improper argument or instruction will ordinarily require reversal.'" <u>Francis</u>, 669 S.W.2d at 91 (citation omitted). Thus, we conclude that the trial court's error requires reversal of the appellant's conviction.

### III. Conclusion

For the foregoing reasons, we reverse the judgment of the trial court and remand this case for a new trial.

_____

NORMA McGEE OGLE, JUDGE