IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 2, 2009

## STATE OF TENNESSEE v. LOIS BRASFIELD

**Appeal from the Criminal Court for Shelby County**
**No. 07-00910    W. Mark Ward, Judge**

**No. W2008-01122-CCA-R3-CD   -   Filed September 30, 2009**

Appellant, Lois Brasfield, was convicted by a Shelby County Jury of felony reckless endangerment and misdemeanor assault. As a result, she was sentenced to eighteen months in incarceration. The trial court ordered her to spend 90 days in jail and the balance of the sentence on probation. On appeal, Appellant contends that the trial court erred by refusing to give the missing witness instruction to the jury at trial. After a review of the record, we conclude that Appellant failed to show that the instruction was warranted. Accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Vicki L. Green, Millington, Tennessee, for the appellant Lois Brasfield.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; William L. Gibbons, District Attorney General; and Paul Hagerman, Assistant District Attorney General; for the appellee, State of Tennessee.

## OPINION

Appellant was indicted on February 13, 2007, by the Shelby County Grand Jury for one count of aggravated assault and one count of reckless endangerment with a deadly weapon. The matter proceeded to trial where the following facts were introduced:

Appellant and the victim, Darlene Bowman, lived on Alta Vista Street in Memphis, Tennessee. At the time of the incident, Chantara McIntosh, Appellant's granddaughter, lived next door to the victim on property owned by Appellant. Appellant lived across the street from her granddaughter. Appellant met Ms. Bowman when she moved into the neighborhood in 2000.

The relationship between Appellant and Ms. Bowman began when Appellant attempted to engage Ms. Bowman in gossip about the previous owners of the home. Ms. Bowman informed Appellant that she was not interested in gossip and did not want to hear it. According to all accounts, the relationship between Appellant and Ms. Bowman deteriorated from that point forward.

According to Ms. Bowman, Appellant came to Ms. Bowman's house on Memorial Day of 2001 and began ripping the wood from the backyard fence and cursing Ms. Bowman and her son, even using racial slurs. The backyard fence separated the Bowman property from the property owned by Appellant and occupied by her granddaughter. At some point, Ms. Bowman sought recourse and resolution of the fence issue through mediation and then in the General Sessions Court. Both efforts were unsuccessful.

On August 5, 2006, Ms. Bowman and a family friend, Walter Lane or Lange, also known as "Bubba," were fixing the fence. Ms. Bowman had approximately one foot inside Appellant's yard and was holding wooden planks in place for "Bubba" to nail in place. Ms. Bowman and "Bubba" saw Appellant drive across the street and order Ms. Bowman to get out of the yard, using racial slurs. "Bubba" went inside to get some more supplies. Ms. Bowman did not move from the yard, so Appellant got in her truck and drove toward Ms. Bowman at a fast pace. Appellant drove her truck and tried to hit Ms. Bowman with it. Ms. Bowman felt that if she had not moved her leg, Appellant would have hit her with the truck. Ms. Bowman called the police.

Officer Derek Gary, along with his partner, responded to the scene. Ms. Bowman was crying when the police arrived. Tire tracks were discovered in the grass in the area beside the house where Ms. Bowman claimed that Appellant tried to run her over with the truck. Ms. Bowman informed the officers that she was fully standing on Appellant's property at the time of the incident. Officer Gary opined that the fence could only be repaired by someone standing on the opposite side of the fence from Ms. Bowman's property. In other words, it would have been impossible to repair the fence without stepping on Appellant's property.

Officer Gary placed a call to his superior officer in order to determine how to proceed with the investigation. At that time, Appellant approached and addressed the officers using racial slurs. Appellant informed the officers that she could drive her truck anywhere on her property that she wished. Appellant also used a highly derogatory racial slur aimed at the victim.

Officer Gary also spoke with "Bubba" at the scene. The officer described him as less cooperative than the victim. He gave the name "Walter Lane"[1] and the address of 2434 Curry Avenue. Officer Gary made this information party of his report. At trial, the State subpoenaed Walter Lane of 2434 Curry Avenue. However, according to counsel for the State, as a result of the subpoena, the State "got personal service on Walter Lane, who appeared . . . [and claimed that he] ad no idea what we were talking about." The State informed the trial court that they were under the impression that they could not find the man identified as "Bubba."

---

[1] At one point, the transcript refers to "Bubba" as "Walter Lan" or "Walter Lang."

At trial, Appellant's granddaughter, Chantara McIntosh, claimed that she made the tire tracks earlier in the day. Ms. McIntosh admitted that the fence between Ms. Bowman's property and Appellant's property was a source of great contention between the two families. Ms. McIntosh claimed that Ms. Bowman would regularly curse her grandmother using racially charged language. Ms. McIntosh claimed that Appellant was not a "mean person" but admitted that she had previously reported to the police an incident in which Appellant threatened her husband's friend with a pistol.

Christopher Dye, testified at trial for the defense. He claimed to have known the victim all his life and had known Appellant for about four months. Mr. Dye performed odd jobs for Appellant, picking up medication and transporting her to different places. He described Appellant as a nice lady and claimed that he had never heard her use racial slurs. Mr. Dye was unaware of any conflicts between Appellant and the victim.

Appellant took the stand in her own defense and denied trying to run over the victim on the day of the incident. Appellant claimed that she had been shopping for school supplies for her great grandson. When she returned from her trip, she drove her truck onto her granddaughter's yard to unload supplies. She saw someone helping the victim repair the fence and ordered the man off her property. Appellant claims that she did not see Ms. Bowman on her property but ordered her off as well. She admitted that there was an ongoing dispute between her and Ms. Bowman and that she had used racial slurs to describe the victim in the past. According to Appellant, she often used racial slurs when she did not take her medication. Appellant claimed that she had not taken her medication on the day of the incident. Appellant insisted that when the police arrived, the officers would not allow her to leave. Appellant also denied the incident described by her granddaughter in which Appellant threatened someone with a gun.

At the conclusion of the trial, counsel for Appellant asked the trial court to instruct the jury with the missing witness instruction due to the absence of Walter Lane at trial. Counsel for Appellant argued that he "would be presumed hostile to the position of the Defense" and was, therefore, an unavailable witness. The State disagreed. The trial court denied the request, finding that an adequate foundation had not been laid to establish that the witness was unavailable.

At the conclusion of the proof, the jury found Appellant guilty of felony reckless endangerment and misdemeanor assault. At a sentencing hearing, the trial court sentenced Appellant to eighteen months for the felony reckless endangerment conviction and six months for the assault conviction. The trial court ordered the sentences to run concurrently to each other and ordered Appellant to serve 90 days of the sentence before being released on probation for the balance of the sentence.

At this point, we must discuss the state of the record on appeal. After trial and sentencing, Appellant apparently filed a motion for new trial. The written motion does not appear in the record on appeal. However, the record contains an order denying the motion for new trial that was filed on May 16, 2008, and a notice of appeal that was filed on the same day. During preparation of the record for appeal to this Court, the trial court held a hearing in which the parties discussed the state

of the appellate record. The trial court explained that for some unknown reason, portions of the record were missing. The parties had recreated portions of the record but ultimately stipulated at this hearing that Appellant had timely filed a motion for new trial on May 1, 2008. The parties also agreed that the transcript of the hearing on the motion for new trial reflected the issues as presented in the written motion.

On appeal, Appellant asks this Court to determine if the trial court erred by refusing to give the missing witness instruction.

*Analysis*

On appeal, Appellant argues that there were three witnesses who were not called by either side in the dispute - Officer Gary's partner, Chris Buchanan, and Walter Lane. Appellant focuses his argument on the absence of witness Walter Lane. Appellant complains that he was not called to testify and that there was no reason given for his absence until the request was made for the missing witness instruction. Appellant claims that only at this point did the State inform the court that they had subpoenaed a Walter Lane who claimed that he had no knowledge of the incident. Appellant contends that the trial court should have given the instruction where the witness was unavailable to the defense and within the power of the State to produce. Appellant contends that even though counsel was permitted to argue that "Bubba" failed to appear at trial, the defense was hampered by the fact that the jury "never knew that Walter Lane had been subpoenaed and released by the prosecutor." Finally, Appellant argues that the absence of "Bubba's" testimony "would have a material effect on the jury's deliberation" because there was no other testimony to support the claims of the victim. The State disagrees, arguing that Appellant is unable to show that the witness could have provided material testimony to the court.

We note at the outset that the record does not contain a written request by Appellant for a jury instruction on the missing witness. Failure to submit a written special request constitutes a waiver of the issue. *See State v. Vickers*, 985 S.W.2d 1, 8 (Tenn. Crim. App. 1997); *State v. Brewer*, 932 S.W.2d 1, 15 (Tenn. Crim. App. 1996). Accordingly, this issue is waived.

Moreover, this issue has no merit. The law regarding the appropriate circumstances for giving the "missing witness" instruction was explained by our supreme court in *State v. Francis*, 669 S.W.2d 85 (Tenn. 1984). A party may comment about an absent witness and have the trial court instruct the jury on the failure of an adverse party to call an absent witness when the evidence shows that "(1) the witness had knowledge of material facts, (2) that a relationship exists between the witness and the party that would naturally incline the witness to favor the party, and (3) that the missing witness was available to the process of the Court for trial." *Delk v. State*, 590 S.W.2d 435, 440 (Tenn. 1979). The mere fact that a party fails to produce a particular person who may have some knowledge of the facts involved does not justify application of the inference against him. However, when it can be said "with reasonable assurance that it would have been natural for a party to have called the absent witness but for some apprehension about his testimony," an inference may be drawn by the jury that the testimony would have been unfavorable. *Burgess v. United States*, 440

-4-

F.2d 226, 237 (D.C. Cir. 1970).  The inference may not be invoked when it is merely shown that (1) the witness "may have some knowledge of the facts involved," *Francis*, 669 S.W.2d at 88, or (2) the witness is equally available to both parties. *State v. Boyd*, 867 S.W.2d 330, 337 (Tenn. Crim. App. 1992); *State v. Eldridge*, 749 S.W.2d 756, 758 (Tenn. Crim. App. 1988); *State v. Overton*, 644 S.W.2d 416, 417-18 (Tenn. Crim. App. 1982).

Applying these standards to the case before this Court, we note that counsel for Appellant orally requested the instruction at the close of the proof, arguing that Walter Lane was the "Bubba" that Officer Gary talked to at the scene of the incident.  The officer's report listed the name and address of Walter Lane.  The State informed the court, out of the presence of the jury, that they had subpoenaed Walter Lane, and he claimed to have no knowledge of the event.  Counsel for Appellant acknowledged that the defense had not attempted to locate the witness but insisted that "Bubba" was the boyfriend of the victim.  On review, we determine that Appellant has failed to show that Walter Lane had material evidence of facts involved, and was inclined to favor the State with his potential testimony.  The trial court properly denied the instruction.

This issue is without merit.


*Conclusion*


For the foregoing reasons, the judgment of the trial court is affirmed.


_____
JERRY L. SMITH, JUDGE