IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 26, 2001

## KARRIE BETH GENTRY v. BRYAN KEITH GENTRY

**Appeal from the Circuit Court for Hamilton County**
**No. 00D918      L. Marie Williams, Judge**

**FILED JULY 25, 2001**

**No. E2000-02714-COA-R3-CV**

This is a divorce case.  Karrie Beth Gentry ("Mother") was awarded primary residential custody of the parties' two minor children, and Bryan Keith Gentry ("Father") was ordered to pay child support of $2,100 per month.  Father appeals, arguing that the trial court erred in imputing income to him for the purpose of determining child support.  Because we find that the trial court properly calculated Father's income based upon what it found to be the only credible evidence presented at trial, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

Marty M. Stone, Chattanooga, Tennessee, for the appellant, Bryan Keith Gentry.

Mark E. Tribble, Signal Mountain, Tennessee, for the appellee, Karrie Beth Gentry.

**OPINION**

I.

The parties were married on June 20, 1992.  Two children were born of their union: Mariah (DOB: September 9, 1996) and Hannah (DOB: February 14, 2000).  Mother filed for divorce on April 18, 2000.

This divorce case proceeded to a bench trial on October 9, 2000.  The testimony at trial revealed the following facts.  Following his graduation from college in 1992, Father began working as a sales representative for Gentry Sales Company, Inc.  Tax records indicate that Father is currently a 49% shareholder of the corporation.  His father, Roy E. Gentry ("Mr. Gentry"), owns the remaining

51% of the stock. Father's federal income tax returns reflect that he had gross income in 1996 of $148,821; $93,659 in 1997; $101,347 in 1998; and $92,184 in 1999. In addition to the income reported on his tax returns, Father testified that Gentry Sales has provided him with a vehicle, paid his automobile, life, and health insurance premiums, and paid out-of-pocket medical expenses incurred by his family. Father testified that he uses a credit card to pay both personal and business expenses and that Gentry Sales reimburses him monthly for the business expenses he incurs. Father estimated that he is reimbursed $2,000 per month for business expenses. He testified that it is "at [his] discretion to determine what's a business expense and what is a personal expense." These reimbursements are not reflected on Father's tax returns.

Father testified that as of April, 2000, the month in which Mother filed for divorce, he no longer receives a salary from Gentry Sales and is instead paid solely on a commission basis. He testified that this change was necessitated by the loss of a major client in December, 1999, and that "there's no longer enough income coming in to support the present – to support the level of income that I was making." When asked why there was a delay in time between the loss of the client and the change in his compensation, Father explained that "the effects weren't really felt until the early part of the year." Father submitted copies of his paychecks from May, 2000, to October, 2000, which indicate that Father was receiving monthly an average of $3,261.51 in commissions, net of taxes. Father's paychecks are signed by Father himself or by Mr. Gentry on behalf of the company. Father testified that he had "no idea" as to the company's gross income to date for the year 2000, and he failed to produce any financial statements of the company's earnings for that year.

Father admitted to having several affairs during the marriage, including a relationship with Melinda Faye Doss. That relationship ended in August, 2000. Doss testified that prior to the end of their relationship, Father told her that he was "cutting his pay" because he did not want to pay Mother alimony. She also testified that Father told her once the divorce was final, he would hire her to do "light-type of work" in his office and that he would give her "the rest of his pay, that he would...pay me and in turn I'd hand it to him." On cross-examination, Doss admitted to making statements in her deposition that were inconsistent with her testimony at trial; however, there is nothing in the record before us indicating that her deposition testimony was contrary to the specific testimony outlined in this paragraph.

Beverly Conley, an acquaintance of Father, testified that she had heard Father say that "he was going to do something to the business to where it didn't look like he was making quite as much money, and he [was] going to hire Faye [Doss] and...pay her so he would be making the money but it wouldn't show." Conley admitted that, to her knowledge, Father had never hired Doss for this purpose.

Upon the conclusion of the proof, the trial court announced its findings from the bench. As to the issue of child support, the trial court found Father's credibility to be "questionable at best," noting that his answers were "internally inconsistent" and that he "equivocated in his answers, avoided answers, and his demeanor indicates that he intends to evade the issues." The trial court found the absence of documentation regarding the gross income of Gentry Sales for the year 2000

to be "the most telling factor on the income issue," noting that if this information had been available, the court could have compared the ratio of Father's income to the company's income historically and drawn a conclusion as to Father's income for the year 2000. The trial court further noted that there was evidence to suggest that Father had attempted to manipulate his income. The court also found compelling the fact that Father failed to call his father as a witness. The trial court, noting that Mr. Gentry's absence was not explained and that he clearly had information pertinent to the issue of Father's income, found that "the presumption is to be drawn that his testimony would be adverse to [Father] were he present."

The trial court proceeded to calculate Father's current income in two ways. First, it averaged his gross income as reflected on his 1996-1999 tax returns. Second, it took the gross income reported on Father's 1999 tax return and added to that the $2,000 in credit card charges paid monthly by Gentry Sales, which payments were not reflected on his tax return. The trial court set child support at $2,100 per month, "not [as] a precise average but a calculation that is within the range of those two various methods of calculation." This appeal followed.

## II.

Our review of this non-jury case is *de novo*; however, the record comes to us accompanied by a presumption of correctness that we must honor unless the evidence preponderates against the trial court's findings. Tenn. R. App. P. 13(d). No presumption of correctness attaches to the lower court's conclusions of law. *Jahn v. Jahn,* 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996). Our search for the preponderance of the evidence is tempered by the principle that the trial court is in the best position to assess the witnesses' credibility; as such, its credibility determinations are entitled to great weight on appeal. *Massengale v. Massengale,* 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995); *Bowman v. Bowman,* 836 S.W.2d 563, 567 (Tenn. Ct. App. 1991).

## III.

Father argues that the proof presented by him at trial establishes that his current income is $3,261 per month and that his child support obligation should be set according to that amount. He contends that by setting child support at $2,100 per month, the trial court erroneously imputed income to him.

The child support award in this case was made upon the trial court's finding that Father's income is greater than the $3,261 per month claimed by him. We do not agree, however, that the trial court's finding was based upon an imputation of income to him. Rather, we find that the trial court was attempting to ascertain Father's actual income, and, because of the lack of reliable current financial information as well as evidence of Father's manipulation of his income, the trial court was required to look beyond the evidence presented by Father in order to determine his *actual* income for the year 2000.

The trial court rejected Father's proof regarding his current income for several reasons. It found that Father "equivocated in his answers, avoided answers, and his demeanor indicates that he intends to evade the issues." The trial court also noted the testimony of two witnesses, who both testified that Father had made statements to the effect that he intended to "cut his pay" in order to avoid paying support to Mother. The trial court further noted that Father failed to produce any evidence regarding the current financial condition of Gentry Sales. Finally, the trial court found that the failure of Mr. Gentry, Father's father and business partner, to testify raised a "presumption...that his testimony would be adverse to [Father] were he present."

Upon reviewing the evidence, we do not find that the evidence preponderates against the trial court's determination of Father's current income. At the core of the trial court's judgment in this case was its determination that Father was not a credible witness. The trial court's determination of Father's credibility is entitled to great weight on appeal. *See Massengale,* 915 S.W.2d at 819; *Bowman,* 836 S.W.2d at 567. In fact, this Court has noted that "on an issue which hinges on witness credibility, [the trial court] will not be reversed unless, other than the oral testimony of the witnesses, there is found in the record clear, concrete and convincing evidence to the contrary." *Tennessee Valley Kaolin Corp. v. Perry,* 526 S.W.2d 488, 490 (Tenn. Ct. App. 1974). In addition to Father's lack of credibility, the trial court had before it the testimony of two witnesses to the effect that Father had attempted to manipulate his income.[1] Moreover, Father failed to produce any evidence of the current financial condition of Gentry Sales – of which he owns 49% – whose decrease in revenue he blames for his dramatic loss in income. Because of Father's lack of credibility and the conspicuous absence of current financial information, the trial court was left without any reliable *current* information upon which to calculate Father's income. Accordingly, the trial court properly looked to other relevant information, such as Father's previously filed tax returns, to calculate his current income for the purposes of child support. *See Presson v. Presson,* C/A No. 03A01-9312-CV-00452, 1994 WL 446894, at *5 (Tenn. Ct. App. E.S., filed August 19, 1994).

In rejecting Father's proof, the trial court also found "compelling" the failure of Father to call Mr. Gentry as a witness. The trial court, applying the missing witness rule, concluded that Mr. Gentry's "testimony would be adverse to [Father] were he present." Father contends that the trial court erred in applying the missing witness rule in this case. We disagree. The missing witness rule provides that the failure of a party to call a witness gives rise to a permissible inference[2] that the missing witness' testimony would have been unfavorable to the party who failed to call the witness.

---

[1]Father argues that one of these witnesses, Doss, was impeached on cross-examination. Whether the witness was impeached to the extent that her testimony at trial was effectively destroyed was for the trial court to decide. Suffice it to say that even without Doss' testimony, the evidence does not preponderate against the trial court's finding that Father attempted to manipulate his income.

[2]The trial court referred to the effect of the missing witness rule as a "presumption." The rule gives rise to a "permissible inference." *State v. Francis*, 669 S.W.2d 85, 88 (Tenn. 1984). However, there is nothing in the record to indicate that the failure of Father to call Mr. Gentry as a witness was treated by the trial court as giving rise to an *irrebuttable* presumption that required the court to discard Father's testimony regarding his current compensation arrangement with Gentry Sales. On the contrary, the trial court appears to have treated its determination with respect to this subject as an inference it was permitted to draw from the absence of Mr. Gentry.

*State v. Francis,* 669 S.W.2d 85, 88 (Tenn. 1984). For the missing witness rule to apply, it must be shown (1) that the missing witness had knowledge of material facts; (2) that a relationship exists between the missing witness and the party against whom the rule is asserted that would naturally incline the witness to favor that party; and (3) that the missing witness was available to the process of the court. *State v. Bigbee,* 885 S.W.2d 797, 804 (Tenn. 1994). As a 51% shareholder in Gentry Sales, it cannot be disputed that Mr. Gentry had access to "knowledge of material facts," *i.e.*, the current earnings of Gentry Sales and Father's current income from that company. It further cannot be disputed that, as the father of the defendant, Mr. Gentry would be "naturally incline[d] to favor" Father. Finally, there is nothing in the record to indicate that Mr. Gentry was not available to the process of the court; on the contrary, a tax return for Gentry Sales reflects that Mr. Gentry lives in Ooltewah, a suburb of Chattanooga. The trial court did not err in drawing the inference permitted by the missing witness rule.

In sum, we do not find that the trial court erred in relying upon Father's previously-filed tax returns in order to calculate his current income for the purposes of setting child support. Based upon our own calculation, Father's average gross income for the years 1996 to 1999 was $109,003 per year, which translates to an average gross monthly salary of $9,084 per month. Pursuant to the Guidelines, his child support obligation based upon this figure would be $2,019 per month. If we take Father's 1999 gross income and add the $2,000 per month in additional payments he received, Father would have a gross income of $116,184, which translates to a gross monthly salary of $9,682. This figure corresponds to a monthly child support obligation of $2,149 per month. The trial court's order of child support of $2,100 per month falls within the range of these two figures. Thus, we do not find that the trial court erred in setting child support at $2,100 per month.[3]

IV.

The judgment of the trial court is affirmed. This case is remanded for enforcement of the trial court's judgment and for collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellant, Bryan Keith Gentry.

_____
CHARLES D. SUSANO, JR., JUDGE

_____

[3] In his reply brief, Father argues, for the first time, that the trial court also erred in calculating the alimony award and in awarding Wife the marital residence. Reply briefs are permitted in order to allow the appellant to "reply to the brief of the appellee." Tenn. R. App. P. 27(c). The issues of alimony and property division were not raised by Mother in her brief. Generally speaking, it is not the office of a reply brief to raise issues on appeal.