FILED
07/08/2021
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 10, 2021 Session

## STATE OF TENNESSEE v. JOSHUA TRAVIS GRIFFITH

**Appeal from the Circuit Court for Warren County**
**No. 18-CR-2044    Larry B. Stanley, Jr., Judge**

_____

### No. M2020-00521-CCA-R3-CD

_____

A Warren County jury convicted the Defendant, Joshua Travis Griffith, of three counts of aggravated statutory rape, and the trial court sentenced him to a total effective sentence of three years.   On appeal, the Defendant contends that the trial court: (1) erroneously allowed the State to present evidence outside the scope of the indictment, as well as evidence of his transmission of hepatitis B to the victim, which should have been excluded pursuant to Tenn. R. Evid. 404(b); (2) erroneously failed to declare a mistrial after the State's motion to amend the indictment in the presence of the jury; and (3) erroneously failed to grant his motion for judgments of acquittal.   He lastly contends that the cumulative effect of the errors violated his right to a fair trial.   After review, we conclude that errors occurred during trial; however, consistent with our conclusion that those errors were harmless, the trial court's judgments are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

John Partin, District Public Defender; Ricky L. Stacy (at trial), Assistant Public Defender, McMinnville, Tennessee; and Brennan M. Wingerter (on appeal), Assistant Public Defender, Franklin, Tennessee, for the appellant, Joshua Travis Griffith.

Herbert H. Slatery III, Attorney General and Reporter; T. Austin Watkins, Assistant Attorney General; Lisa S. Zavogiannis, District Attorney General; Thomas J. Miner, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Background and Facts

This case arises from the Defendant's multiple instances of sexual contact with the victim, a seventeen-year-old girl. The Defendant was a friend of the victim's uncle and age thirty-seven at the time he engaged in multiple sexual acts with the victim. For these offenses, a Warren County grand jury indicted the Defendant for three counts of aggravated statutory rape "between the dates of March 1, 2017 and September 1, 2017[.]"

## A. Trial

Prior to trial, the Defendant filed a motion to exclude evidence, pursuant to Tennessee Rules of Evidence 401, 402, 403, and 404(b), of his transmission of hepatitis B to the victim, on the grounds that the evidence was irrelevant and prejudicial because the Defendant had admitted to law enforcement that he had engaged in sexual acts with the victim. The trial court heard arguments on the motion and concluded that the evidence was relevant and that the probative value "substantially" outweighed the potential prejudicial effect on the Defendant.

The following evidence was then presented at the Defendant's trial: Trina Holder, the victim's mother, testified that the victim was seventeen years old in August of 2017; her seventeenth birthday was in May of 2017. She testified that the victim had been diagnosed with having "anxiety," "a hoarding tendency," and schizophrenia, and that the victim had a specialized education plan in school. Ms. Holder testified that the victim received medical treatment for her conditions, including receiving treatment from a psychiatrist.

Ms. Holder testified that the Defendant was friends with Ms. Holder's brother and also that the Defendant lived close to Ms. Holder's mother, the victim's grandmother. She testified that, in summer and early fall of 2017, the victim visited her grandmother at her grandmother's residence, as often as every other weekend, and spent the night there. Ms. Holder testified that in May of 2018, prior to the victim turning eighteen, she took the victim to the doctor for some blood work, after which it was revealed that the victim had contracted hepatitis B. This prompted Ms. Holder to contact law enforcement on the victim's behalf.

The victim testified that she was nineteen years old at the time of trial, had recently married, and was living in North Dakota. The victim testified that she had been acquainted with the Defendant, who was a friend of her uncle's. The Defendant lived within walking distance of her grandmother's home, and the victim met the Defendant in August 2017 when she went with her uncle to the Defendant's house. She recalled this first meeting was in August because it was around the time of the Defendant's birthday. The victim had "heard" about the Defendant prior to their meeting but was sure they were not introduced until August of 2017. The Defendant, upon meeting her, told the victim

2

she was "beautiful and gorgeous" and to contact him when she turned eighteen. The victim recalled that her uncle told the Defendant her age at the time. The victim's uncle said, "That's my niece, and she's only 17."

The victim testified that she went back to the Defendant's house the next day after their first meeting. She asked the Defendant if his compliments about her beauty were true, and, before the victim left, she and the Defendant kissed. The next time she saw the Defendant, she performed oral sex on him. This occurred in her grandmother's shed behind her house because the victim was "scared" to have sex at the Defendant's house. She testified that the Defendant ejaculated on her chest. She clarified that she was seventeen years old at the time. The victim testified that an incident happened a "second time," when she walked to the Defendant's house and again, they went to her grandmother's shed. The victim performed oral sex on the Defendant, and then they had vaginal intercourse. A "third time," the victim and the Defendant had anal sex in her grandmother's shed. She testified that they had "planned" to have anal sex and that she brought a lubricant with her to the shed so "it wouldn't hurt." The victim testified that the Defendant put the lubricant on his penis and on her anal area. She testified that he ejaculated inside her. The victim stated that she was seventeen years old when the second and third incidents occurred.

The victim testified that she told her two cousins about what had happened but waited to tell her mother. She also waited to tell her grandmother and testified that this was because she was scared and thought that what she and the Defendant were doing might be illegal. The victim recalled her 2018 visit to the doctor and said she was nervous because of what the Defendant might have transmitted to her. The victim had heard from her grandmother that the Defendant had a "disease." After the results of the blood tests came back, the victim told her grandmother and her mother everything that had happened. They contacted the sheriff's department and the Child Advocacy Center ("CAC"). The victim recalled talking to someone at the CAC and testified that she had told the center worker about the same events with the Defendant. It appears from the record that the victim was interviewed at the CAC and that the State obtained a copy of the recorded interview. The interview was referred to at trial, and the Defendant and the victim each made reference to watching the recording, but it was not introduced or shown at trial.

The victim recalled that the Defendant told her that they needed to be "careful" because of her age. The victim was in high school at the time but did not remember revealing that fact to the Defendant.

On cross-examination, the victim agreed that she went to his house "numerous times" and that she initiated contact with him each time. She agreed that she was the one who contacted the Defendant after their August 2017 meeting, and that the Defendant had

told her to "reach out" when she turned eighteen.   She agreed that the Defendant had no way of contacting her.

On cross-examination, the following exchange occurred between the victim and defense counsel:

Defense:   Well, you've testified about three particular times where you had sexual contact with [the Defendant], right?

Victim:   Yes, but there was more than that but from what I got, those three were the important ones.

Defense:   Okay.   I'm not sure I understand you.

Victim:   . . . from what I got from [the prosecutor], he said those were the three important ones.

Defense:   So you're saying there are other times that you had sex with [the Defendant]?

Victim:   Yes.

The victim did not know exactly when the three incidents occurred, but she remembered that the second incident was several weeks but less than a month after the first incident in August of 2017.   She reiterated that the first incident occurred "around his birthday," which she knew was in August around the time of the total solar eclipse.   She could not recall when the third incident occurred.   The victim testified that she spent time with the Defendant outside of their sexual encounters and that the Defendant bought her gifts.   The victim agreed that she did not tell anyone about the Defendant's comments regarding her age.   She also agreed that she denied being sexually active at the 2018 doctor's appointment because she did not want to get in trouble.   She agreed that she was "sneaking around" with the Defendant.

The victim reiterated that she had been interviewed by a worker at the CAC and agreed that she never told the interviewer about the Defendant's comment regarding her age or that he did not know she was a minor.   The victim testified that she did not tell everything to the CAC interviewer.

On redirect-examination, the victim testified that the sexual encounters continued until March of 2018.   The victim stated that she turned eighteen in May of 2018.   The victim testified that she watched the CAC interview the day before trial and identified

4

several things she had not stated during the interview; the victim did say, however, that she told the interviewer about "all the times" she and the Defendant had sex, which she testified was "every other weekend." She agreed that the prosecutor had asked her to testify to three instances.

At this point the State made an oral motion in front of the jury "to include the time period through March of 2018." The Defendant objected, and the jury was removed from the courtroom. The State restated its request that "the indictment be amended to conform to the proof which went in without objection that [the victim] was having sex with [the Defendant] as late as March of 2018. The Defendant restated his objection to amending the indictment and also moved for a mistrial on the basis that the State had made the request in front of the jury. The Defendant argued that an indictment could not be amended after jeopardy had attached and argued that he had been put on notice by the indictment of sexual encounters that occurred between March and September of 2017. The Defendant stated that, in preparation for trial, he had sought to clarify the timeline of the offenses, and the State had assured him that the timeline in the indictment was correct. The Defendant argued that the conduct testified to outside of the indictment's time period was barred by Tennessee Rule of Evidence 404(b). The State responded that the law surrounding sexual offenses, particularly involving children, allowed for some leeway with regard to dates, hence the principle of election of offenses. Thus, the State argued, and in light of the victim's testimony regarding her multiple instances of sexual contact with the Defendant, it was up to the State to elect which of these offenses it wanted to rely on to convict the Defendant.

The trial court agreed with the State's argument but denied the motion to amend the indictment and left it up to the jury to determine the time frame of the events and whether they occurred within the time frame listed in the indictment. The trial court also denied the motion for a mistrial. The jury returned to the courtroom without further instruction concerning the State's motion to amend that they had heard.

Shawn Bell, the victim's uncle, testified that he lived with his mother, the victim's grandmother, down the road from the Defendant. Mr. Bell recalled taking the victim with him to visit the Defendant. He testified that the Defendant was "hitting on" the victim, telling her she looked good, and that the Defendant "would like to have some of that." Mr. Bell was upset by this and, after telling the Defendant to stop, he left with the victim. Mr. Bell said, "Don't be saying that to [the victim], . . . she's underage." Mr. Bell testified that the Defendant "knew" the victim was underage and that Mr. Bell told the Defendant that the victim was still in high school. The Defendant and Mr. Bell had known each other a long time and gone to the same school; as a result, the Defendant "knew every member" of Mr. Bell's family.

5

After learning that the victim had contracted hepatitis B, Mr. Bell went to the Defendant's house to confront him. The Defendant, upon seeing Mr. Bell, ran inside his house, locked his doors, and screamed, "I'm sorry."

Betty Bell, the victim's grandmother, testified that the victim visited her home often in 2017. At some point, the victim told Ms. Bell about a sexual relationship with the Defendant. Ms. Bell later spoke to the Defendant, and he agreed that he had engaged in sexual acts with the victim; he also admitted to transmitting hepatitis to the victim.

Jason Rowland testified that he worked for the Warren County Sheriff's Office and investigated the complaint against the Defendant. Deputy Rowland arranged for the victim to be interviewed at the CAC, and he later reviewed the recording of the interview. Deputy Rowland then contacted the Defendant and spoke to him on August 20, 2018, at which point the Defendant provided a statement. The signed statement read as follows:

> Shawn Bell, [the victim's] uncle, brought her to my home. We became friends. I bought her some shoes and clothes because she said that the kids would make fun of her. She bought me things, too. At some point in time this became sexual. Holly brought her to my home on her 18th birthday. This was the last time I saw her. The first time we had sex was a couple of months before her 18th birthday. We had sex less than five times. She came onto me is how this turned sexual. I do have hepatitis B, but I do not have any other STDs. I don't know how she got anything else. Everything we done was consensual. I didn't force sex on her. She knew what she was doing. We had anal sex. She wanted to do everything we had done. She had other men coming in and out of the house while [Mr. Bell] and [her grandmother] were working. She said she was having sex with them.

On cross-examination, Deputy Rowland testified that it was his understanding that the sexual contact between the victim and the Defendant took place between March and September 2017; this was based on information received from the victim and her family.

At this point, the Defendant moved for judgments of acquittal as to Counts 2 and 3 of the indictment because they were "materially at odds with the time frame alleged in the indictment." The trial court denied the motion stating that there was sufficient evidence as to those counts if the jury chose to believe the victim's time frames.

The Defendant testified that he did not know that the victim was of minor age when they engaged in their sexual relationship. He agreed that he met the victim for the first time in August of 2017. He recalled complimenting the victim's looks on that date and

that he asked her to be in touch when she turned eighteen. The Defendant stated that the victim contacted him after their initial meeting, and every other time after that, which led to them engaging in a sexual relationship.

The Defendant disputed the victim's timeline as to when they engaged in sexual activity after their August 2017 meeting. The Defendant testified that they engaged in sexual activity just over two months before the victim's eighteenth birthday but that, at the time, he did not think she was underage. The Defendant recalled that, when the victim came to his house, she asked what present he had gotten her for her birthday. This led him to believe she had turned eighteen.

The Defendant testified that the victim came to him to have sex and that he assumed she had turned eighteen, but he agreed that he did not make any attempt to verify her age.

Based on this evidence, the jury convicted the Defendant of three counts of aggravated statutory rape. The trial court held a sentencing hearing and imposed concurrent three-year sentences for each of the convictions for an effective sentence of three years of incarceration. It is from these judgments that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that evidence of his and the victim's multiple sexual encounters, which occurred outside the time period listed in the indictment, should have been excluded pursuant to Tennessee Rule of Evidence 404(b). He also claims that evidence of his transmission of hepatitis B to the victim should have been excluded pursuant to Rule 404(b). He further argues that there is a manifest necessity for a mistrial because the State's oral motion to amend the indictment was made in the presence of the jury. Finally, he contends that the trial court should have granted his motion for judgments of acquittal. The State responds that the Defendant "opened the door" during cross-examination of the victim for the admission of their multiple sexual encounters that occurred outside the scope of the time frame in the indictment. The State further responds that the hepatitis B evidence was properly admitted and that no manifest necessity for a mistrial was created by the State's oral motion to amend the indictment in the jury's presence. The State responds that the Defendant's motion for judgments of acquittal was properly denied.

### A. 404(b) Evidence
### 1. Uncharged Sex Acts

The Defendant contends that the trial court erred when it allowed the State to present evidence of uncharged sex acts that took place outside the time period listed in the

indictment, March 1, 2017 through September 1, 2017.  The Defendant argues that the victim's testimony about sexual acts that occurred in late fall of 2017 and into 2018 was improper admission of evidence, in violation of Tennessee Rule of Evidence 404(b), because those acts were not charged in the indictment and constituted propensity evidence, or other "bad acts."   He contends that there was a clear danger of unfair prejudice to him because the uncharged acts were similar to the crimes for which he was on trial.   The State responds that the evidence came in through the victim's testimony on cross-examination, and thus the Defendant "opened the door" to the evidence.   For reasons set forth in our opinion, we agree with the Defendant that the evidence should have been excluded pursuant to Rule 404(b); however, in light of the overwhelming evidence against the Defendant, we conclude that the error was harmless.

Generally, "[a]dmission of evidence is entrusted to the sound discretion of the trial court, and a trial court's ruling on evidence will be disturbed only upon a clear showing of abuse of discretion."   *State v. Robinson*, 146 S.W.3d 469, 490 (Tenn. 2004).   The Tennessee Rules of Evidence provide that all "relevant evidence is admissible," unless excluded by other evidentiary rules or applicable authority.   Tenn. R. Evid. 402.   Of course, "[e]vidence which is not relevant is not admissible."   *Id.*   Relevant evidence is defined as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."   Tenn. R. Evid. 401.   Even relevant evidence, however, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."   Tenn. R. Evid. 403.

"Evidence of other crimes, wrongs, or bad acts is not admissible to prove the character of a person in order to show action in conformity with that character trait.   Tenn. R. Evid. 404(b).   Such evidence may be admissible, however, for "other purposes."   *Id.* Our supreme court has determined that such "other purposes" include demonstrating motive or intent.  *State v. Berry*, 141 S.W.3d 549, 582 (Tenn. 2004).   Such evidence is admissible for other purposes, provided that the trial court: (1) upon request, holds a hearing outside the jury's presence; (2) determines that a material issue exists other than conduct conforming with a character trait and, upon request, states the basis for its determination; (3) finds proof of the other crime, wrong, or act to be clear and convincing; and (4) determines that the probative value of the evidence is not outweighed by the danger of unfair prejudice.   Tenn. R. Evid. 404(b).

In short, the safeguards in Rule 404(b) ensure that defendants are not convicted for charged offenses based on evidence of other crimes or acts, as in the present case, the other instances of sexual contact other than the three alleged in the indictment.  *State v. James*,

81 S.W.3d 751, 758 (Tenn. 2002). When a trial court substantially complies with the procedural requirements of Rule 404(b), the standard of appellate review of the trial court's decision is abuse of discretion. *See State v. Powers*, 101 S.W.3d 383, 395 (Tenn. 2003); *James*, 81 S.W.3d at 759. If the strict requirements of the rule are not substantially observed, the reviewing court gives the trial court's decision no deference. *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997).

Relevant here, evidence of a defendant's other acts may be subject to exclusion under Rule 404(b) until the defendant "opens the door" to the evidence by introducing other evidence or through cross-examination of a State's witness. *See* NEIL P. COHEN ET AL., TENNESSEE LAW OF EVIDENCE § 4.04[8] [j] (6th ed. 2010). "Opening the door" "expand[s] the realm of relevance," and the opposing party may be permitted to present evidence on that subject. 21 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE EVIDENCE § 5039.1. Our supreme court recently addressed the concept of "opening the door" and its impact on the fundamental fairness of a trial in *State v. Vance*, 596 S.W.3d 229 (Tenn. 2020) (distinguishing the doctrine of opening the door with the doctrine of curative admissibility). Our supreme court explained that "opening the door is a doctrine intended to serve fairness and truth-seeking." *Id.* at 250 (citations omitted). After a party has "opened the door," the remedy sought by the opposing party should be both relevant and proportional. *Id.* at 250-51. The "remedy," allowing otherwise inadmissible evidence to be introduced by the opposing party, should be limited to that necessary to correct a misleading advantage created by the evidence that opened the door. *Id.* at 251 (citation omitted). Our supreme court stated:

> The doctrine of opening the door cannot . . . be subverted into a rule for injection of prejudice. . . . The trial court must carefully consider whether the circumstances of the case warrant further inquiry into the subject matter, and should permit it only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence. . . . [I]n making its determination, the trial court should balance the harm to the [S]tate in restricting the inquiry with the prejudice suffered by the defendant in allowing the rebuttal.

*Id.* (quoting *State v. Phillips*, 927 A.2d 931, 943 (2007)).

The Defendant complains of the victim's testimony about multiple sexual encounters with the Defendant that occurred outside the indictment's time period. As detailed in the facts, defense counsel asked the victim to clarify her testimony about the "three important" times she and the Defendant had sex; defense counsel asked, "So you're saying there are other times that you had sex with [the Defendant]?" and the victim replied, "Yes." The State, on redirect-examination, went on to solicit more testimony from the

victim that she and the Defendant had sex "every other weekend" and then sought to amend the indictment based on this testimony. The Defendant made objections at several points to this evidence of additional sexual acts, and requested a jury-out hearing, all of which were overruled or denied.

We first conclude that the trial court failed to substantially comply with the requirements for admitting this type of "propensity" evidence, typically excluded by Rule 404(b), because no hearing was held to address: what material issue existed other than conduct conforming with a character trait; the clear and convincing evidence of the other crime, wrong, or act; and whether the probative value of the evidence was outweighed (or not) by the danger of unfair prejudice . *See* T.R.E. 403, 404(b). Without the trial court's substantial compliance to the Rule 404(b)'s requirements, we review the admission of this particular evidence *de novo*. *DuBose*, 953 S.W.2d at 652.

Upon review, we conclude that the evidence was admitted in error. While the victim testified about these additional sex acts outside the indictment on cross-examination, the State should not then have been afforded leeway to further explore these instances on re-direct examination. This was not a "proportional response" to the victim's inadmissible testimony and did not create a need for the State to remedy any error. To allow the State to continue to question the victim about these inadmissible acts flies in the face of the underlying purpose of the doctrine of "opening the door," because her testimony on cross-examination did not create an unfair advantage that needed to be countered by the State. The trial court erred when it allowed further testimony about these sexual encounters that allegedly occurred outside the scope of the time frame in the indictment. In our review of this Rule 404(b) issue, conducted *de novo*, we conclude that no material issue existed, other than propensity, and that any probative value of the evidence was clearly outweighed by the danger of unfair prejudice. In light of this, we now turn to consider whether the trial court's error in allowing this evidence was harmless.

The harmless error doctrine recognizes that the central purpose of a criminal trial is to decide factual questions of a defendant's guilt or innocence, and it promotes the public's respect for the criminal process by focusing on the underlying fairness of the trial rather than technicalities or "the virtually inevitable presence of immaterial error." *State v. Rodriguez*, 254 S.W.3d 361, 366 (Tenn. 2008). Improperly admitted evidence is reviewed under a non-constitutional harmless error analysis. *State v. Jeff Carter*, No. 2009-02399-CCA-R3-CD, 2010 WL 5343212, at *13 (Tenn. Crim. App. Dec. 16, 2010), *no perm. app. filed* (citing *State v. Powers*, 101 S.W.3d 383, 397 (Tenn. 2003)). Under this analysis, a defendant must demonstrate "that the error 'more probably than not affected the judgment or would result in prejudice to the judicial process.'" *Rodriguez*, 254 S.W.3d at 371-72 (quoting Tenn. R. App. P. 36(b)).

When assessing the impact of a non-constitutional error, appellate courts must review the record as a whole, considering properly admitted evidence of the defendant's guilt. *Id.* at 372 (citing *Gilliland*, 22 S.W.3d at 274). "The greater the amount of evidence of guilt, the heavier the burden on the defendant to demonstrate that a non-constitutional error involving a substantial right more probably than not affected the outcome of the trial." *Id.* (citing *Toliver*, 117 S.W.3d at 231; *State v. Francis*, 669 S.W.2d 85, 91 (Tenn. 1984)). Whether an error was harmless "does not turn upon the existence of sufficient evidence to affirm a conviction or even a belief that the jury's verdict is correct." *Id.* Instead, appellate courts must determine what impact the error may have had on the jury's decision-making. *Id.*

Here, the evidence of the Defendant's guilt was overwhelming. In a statement given to law enforcement, the Defendant admitted to having sexual contact with the victim when she was still a minor. The victim confirmed this, as did her grandmother and her uncle, both of whom testified that they were made aware of the Defendant and the victim's sexual relationship. The Defendant also admitted to the victim's uncle that the sexual contact had occurred and that he was remorseful. In light of this evidence, based on our careful review of the record as a whole, and in consideration of the properly admitted evidence of the Defendant's guilt, it is our conclusion that this error was harmless. We conclude that the jury's decision-making was impacted minimally, if at all, by the trial court's error.

### 2. Hepatitis B

The Defendant also contends that the trial court abused its discretion when it allowed the victim to testify about the Defendant transmitting hepatitis B to her. He contends that this evidence was irrelevant and highly prejudicial and was admitted in violation of Rule 404(b). The State responds that the trial court did not abuse its discretion when it admitted the evidence, pursuant to a proper weighing at the requisite pre-trial hearing. Again, we agree with the Defendant that this evidence was admitted in error, however, we conclude the error was harmless.

Prior to trial, the trial court heard arguments from both parties regarding the State's request to introduce the evidence that the Defendant had sexually transmitted hepatitis B to the victim. The Defendant sought to exclude it as a prior bad act pursuant to Rule 404(b) and as irrelevant. The State responded that having hepatitis was "not a bad act" and the fact that the Defendant admitted to having it had "considerable bearing" on the proof and "the jury's understanding" of the case, because the victim did not disclose the sexual contact until after she learned she had contracted the disease. The State further argued that the Defendant's admission to having the disease corroborated the victim's testimony. The trial court considered both arguments and found that the evidence was relevant and that its probative value outweighed any prejudice to the Defendant.

11

We initially conclude that the trial court did not substantially comply with the requisite standards of admission pursuant to Rule 404(b) (stating that a trial court must: (1) upon request, hold[] a hearing outside the jury's presence; (2) determine[] that a material issue exists other than conduct conforming with a character trait and, upon request, state[] the basis for its determination; (3) find[] proof of the other crime, wrong, or act to be clear and convincing; and (4) determine[] that the probative value of the evidence is not outweighed by the danger of unfair prejudice). The trial court held a hearing as required but failed to articulate that the evidence of the transmission of a sexually transmitted disease was being submitted for any purpose other than to prove a "bad act" and show that the victim and the Defendant had sexual intercourse. The trial court similarly failed to articulate that the Defendant's transmission of hepatitis B to the victim was established by clear and convincing evidence. Finally, the trial court seemingly concluded that the probative value of the evidence outweighed its prejudicial value without conducting the actual process of weighing the two considerations. Without substantial compliance to the safeguards required by Rule 404(b), we review the admission of this evidence *de novo*. *DuBose*, 953 S.W.2d at 652.

Our *de novo* review leads us to conclude that evidence of the Defendant's hepatitis B was inadmissible. The act of exposing another individual to the hepatitis B virus, without their knowledge and, as relevant here, through intimate contact, is a crime. T.C.A. § 39-13-109(a)(1) (2019). The State's argument at the hearing that the disease was not a "bad act" is simply untrue. Absent a proscribed reason to admit evidence of this crime, we conclude that it should have been excluded pursuant to Rule 404(b) because it was highly prejudicial to the Defendant. As there was no question about whether the sexual acts occurred, the evidence of the sexually transmitted disease did not aid the jury in making this determination, or any other fact in question. Furthermore, it created the danger of painting the Defendant in a bad light. Tenn. R. Evid 403. Accordingly, this evidence was admitted in error.

Again, in light of the evidence of the Defendant's guilt, we further conclude that this error was harmless. We reiterate that "[t]he greater the amount of evidence of guilt, the heavier the burden on the defendant to demonstrate that a non-constitutional error involving a substantial right more probably than not affected the outcome of the trial." *Rodriguez*, 254 S.W.3d at 372. While the admission of the evidence was in error, we cannot conclude that it more probably than not affected the outcome of the trial, in light of the Defendant's statement to law enforcement and the Defendant's testimony admitting to have sexual contact with the seventeen-year-old victim, corroborated by the victim's testimony, as well the testimony of several additional witnesses.

**B. Motion for a Mistrial**

The Defendant contends that the trial court should have granted a mistrial following the State's oral motion, in the presence of the jury, to amend the indictment following the evidence of sexual acts outside the indictment's time period. The State responds that the Defendant has not shown that there a manifest necessity for a mistrial. We agree with the State.

"The purpose of declaring a mistrial is to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict." *State v. Welcome*, 280 S.W.3d 215, 222 (Tenn. Crim. App. 2007). A mistrial should be declared only upon a showing of manifest necessity, that is, when a miscarriage of justice would result if the trial were to continue. *State v. Banks*, 271 S.W.3d 90, 137 (Tenn. 2008). The appellant bears the burden of establishing manifest necessity. *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). The decision to grant a mistrial lies within the sound discretion of the trial court. *State v. Saylor*, 117 S.W.3d 239, 250 (Tenn. 2003).

We have concluded that evidence of additional sexual contact between the victim and the Defendant was admitted, during the victim's testimony, in violation of Rule 404(b). This led to the State's motion to amend the indictment, made in the presence of the jury, following which the jury was immediately excused from the courtroom. Upon the jury's return to the courtroom, no curative instruction was given to explain the outcome of the motion, likely resulting in confusion amongst the jury members. The trial court did not offer an explanation during the jury instructions. This omission is troubling and leads us to question whether it led to confusion amongst the jury members as to which time period they needed to consider. However, in light of the evidence that the Defendant admitted to sexual encounters with the victim while she was of minor age and prior to the return of the indictment, we conclude that the trial court did not abuse its discretion when it denied the Defendant's motion. *See State v. Byrd*, 820 S.W.2d 739, 740 (Tenn. 1991) (stating that the evidence need only establish the offense occurred prior to the return of the indictment); *see also State v. Brown,* 992 S.W.2d 389, 392 (Tenn. 1999) (finding that although the State elected an offense between April 11 and June 30, 1993, and the proof showed that the offense happened before April 11, 1993, the evidence was not "legally insufficient in this regard" because the State was not required to prove an offense was committed on a specific date); *State v. Vickers*, 985 S.W.2d 1, 9 (Tenn. Crim. App. 2002) (noting that it was "immaterial" that the indictment alleged the offense was committed in April 1990, while the proof at trial showed that it was committed in August 1990, because both dates were before the indictment was filed).

Additionally, based on the issues presented in this case, we must reiterate our encouragement that each prosecutor's office address internally its procedures to ensure the accuracy of its indictments. *State v. Ariel K. Robinson, et al.*, No. M2020-00058-CCA-

13

R3-CD, 2021 WL 1020913, at *17 (Tenn. Crim. App., Nashville, March 17, 2021).

## C. Motion for Judgments of Acquittal

The Defendant contends that the trial court should have granted his motion for judgments of acquittal regarding Counts 2 and 3 based on the evidence of these two indicted charges occurring outside the indictment's time frame.

Rule 29 of the Tennessee Rules of Criminal Procedure provides, in relevant part, as follows:

> On Defendant's motion or its own initiative, the court shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, presentment, or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

Tenn. R. Crim. P. 29(b). This rule empowers the trial judge to direct a judgment of acquittal when the evidence is insufficient to warrant a conviction either at the time the State rests or at the conclusion of all the evidence. *See, generally, Overturf v. State*, 571 S.W.2d 837 (Tenn. 1978). By presenting evidence, however, a defendant generally waives his ability to appeal a trial court's mid-trial denial of his motion for a judgment of acquittal. *Finch v. State*, 226 S.W.3d 307, 317 (Tenn. 2007).

In this case, the trial court denied the Defendant's motion for judgment of acquittal raised at the close of the State's proof. Following this denial, the Defendant presented evidence. The Defendant, therefore, waived his right to appeal the denial of his motion for judgment of acquittal raised at the close of the State's proof. *Id.* at 317.

## D. Cumulative Error

Lastly, the Defendant contends that the cumulative effect of the errors in this case deprived him of a fair trial. We disagree. The cumulative error doctrine is a judicial recognition that multiple errors committed in a trial, when aggregated, have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial. *State v. Hester*, 324 S.W.3d 1, 77 (Tenn. 2010). Useful guidance by our supreme court is to consider each of the Defendant's claims "against the background of the case as a whole, paying particular weight to factors such as the nature and number of errors committed; their . . . combined effect; how the [trial] court dealt with the errors as they arose (including . . . any remedial efforts); and the strength of the State's case." *Id.* at 77 (citing *US v. Sepulveda*, 15 F.3d 1161, 1196 (1st Cir.1993). Regarding the errors committed and their effect on the trial as a whole, we conclude that, in light of the

14

overwhelming and uncontroverted evidence of the Defendant's guilt, the cumulative effect of the errors at trial were not so great as to deprive him of his right to a fair trial and therefore require reversal of his convictions.

## III. Conclusion

After a thorough review of the record and relevant authorities, we affirm the Defendant's convictions.

_____
ROBERT W. WEDEMEYER, JUDGE