IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 21, 2024

## STATE OF TENNESSEE v. AARON DEAN WHITMAN

**Appeal from the Circuit Court for Blount County**
**No. C28318      David Reed Duggan, Judge**

_____

**No. E2023-01050-CCA-R3-CD**

_____

Defendant, Aaron Dean Whitman, was convicted by a Blount County jury of violating the sex offender registry, for which he received a sentence of 391 days' incarceration. On appeal, Defendant argues that the trial court erred by denying his motion to stipulate to his prior convictions, for which he was required to register as a sex offender. Upon review, we conclude that the trial court erred by allowing evidence of the named offenses for which Defendant was convicted; however, we determine that the error was harmless and affirm Defendant's conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which TIMOTHY L. EASTER, J., joined. JAMES CURWOOD WITT, JR., J., not participating.[1]

C. John Chavis (on appeal) and Dillon E. Zinser (at trial), Knoxville, Tennessee, for the appellant, Aaron Dean Whitman.

Jonathan Skrmetti, Attorney General and Reporter; Brooke A. Huppenthal, Assistant Attorney General; Ryan K. Desmond, District Attorney General; and J. Scott Stuart, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

---

[1] The Honorable J. Curwood Witt, Jr., a former presiding judge who served on this court for twenty-seven years, died during the pendency of this appeal. We thank him for his enduring commitment to this Court and the rule of law.

## Factual and Procedural Background

The May 2022 term of the Blount County Grand Jury indicted Defendant for violating the sex offender registry by failing to report in person within forty-eight hours of establishing or changing a primary or secondary residence, a Class E felony.[2] *See* Tenn. Code Ann. §§ 40-39-202 (defining sexual offender, primary residence, and secondary residence), -203 (providing that an offender "shall register or report in person" within forty-eight hours of "establishing or changing a primary or secondary residence"), -204 (reporting requirements), -208 (stating that violations of the sex offender registry "shall include . . . [f]ailure of an offender to timely register or report").

Prior to trial, Defendant filed a "Motion to Accept Stipulation as to Prior Convictions Requiring Sex Offender Registration" ("stipulation motion"). Defendant requested that the trial court exclude at trial any "substantive or narrative evidence as to why [Defendant] is on the Sex Offender Registry" and stated that he was willing to stipulate that, in 2012, he pleaded guilty in Nevada to two counts of "Possession of Visual Presentation Depicting Sexual Conduct of a Child" ("the Nevada convictions"), for which he was required to register as a sex offender. Defendant noted that a police case report included in the State's discovery stated that Defendant possessed a video recording of a ten-year-old child performing sexual acts. In the motion, Defendant discussed Tennessee Rule of Evidence 404(b) governing prior bad acts evidence, as well as our supreme court's opinion in *State v. James*, 81 S.W.3d 751, 752 (Tenn. 2002), which he cited for the proposition that the probative value of a "specific narrative" was "drastically outweighed" by the danger of unfair prejudice when a defendant offered to stipulate to prior sex offense convictions. Defendant also filed a general pretrial motion to exclude evidence of prior bad acts pursuant to Tennessee Rules of Evidence 404(b) and 801.[3]

At a pretrial motion hearing, the trial court addressed the stipulation motion. Defense counsel brought to the court's attention a motion to redact the Nevada judgment of convictions[4] that he had filed[5] that morning, which he characterized as "in essence . . . an amendment to the motion for stipulation." Defense counsel explained, "Rather than stipulation we're asking for a redaction as it relates to the Nevada judgment showing that

---

[2] The initial indictment stated that Defendant had "fail[ed] to timely register"; the trial court subsequently granted the State's motion to amend the indictment, to which Defendant had no objection.

[3] We note that the body of the motion only discussed Rule 404(b).

[4] We note that the document issued by the District Court for Clark County, Nevada, detailed both convictions at once instead of issuing separate judgment forms for each count of the indictment.

[5] This motion does not appear in the record on appeal.

[Defendant] was required to report to the registry as well as a reference to the underlying offense as it appears in his registry documents." Defense counsel specified that Defendant was requesting for "the names of the counts themselves [to] be redacted" on the judgment form. Defense counsel argued that the final paragraph in the judgment, which stated that Defendant was required to register as a sex offender, was sufficient to satisfy the State's burden of proving as an element of the offense that Defendant was required to register. The trial court asked defense counsel if he was "wanting [the court] to allow [the State] only to say that he was required to register and not tell the [j]ury what the offense was that put him on the registration requirement," and defense counsel responded affirmatively. Defense counsel asserted that Defendant's conviction for possessing "child pornography . . . would inflame the [j]ury and their prejudice. And the probative value of the conviction[s] . . . is really non-existent if the [j]ury knows from the final paragraph in the judgment that he was ordered to register as a sex offender."

The trial court denied the motion, stating as follows:

Well, I don't think what you're asking complies with the pattern jury instructions

. . . .

It requires as the very first element that the first thing the [S]tate has to prove is that . . . Defendant had a conviction for x and then you name what the conviction is, what the offense is, criminal offense listed in Tennessee Code Annotated [s]ection 40-39-202, which under the definition of sexual offense or violent sexual offense. So the State has to prove that.

. . . .

I'm going to deny your motion that I redact everything except the last paragraph. Because the law specifically requires that the State prove that there was an offense . . . Defendant was convicted of and what that offense was that . . . required him to be placed on the registry. So I'm going to deny that part of your motion.

The trial court noted that it would not allow the State "to go into any details" beyond the names of the offenses. The trial court subsequently issued a written "Motions Order," in which it stated that, in relevant part, the parties had agreed the State would comply with the procedure prescribed by Rule 404(b), but the State would be permitted to introduce proof of the Nevada convictions.

At trial, the State introduced a certified copy of a March 20, 2012 document entitled, "Judgment of Conviction (Plea of Guilty)," which stated that Defendant had pleaded guilty to two counts of "Possession of Visual Presentation Depicting Sexual Conduct of a Child," a "Category B Felony," in the District Court for Clark County, Nevada. The judgment reflected that Defendant was sentenced to twenty-four to seventy-two months in confinement on each count, to be served consecutively. The last line of the document stated that Defendant was ordered to register as a sex offender within forty-eight hours of any release from custody.

Knox County Sheriff's Office (KCSO) Corporal David Lively testified that he initially saw Defendant in his office to register as a sex offender in July 2021, and that Defendant left some time later and moved to Nashville. Corporal Lively stated that the last signed copy of the "rules and regulations" he found in Defendant's Nashville file was dated December 30, 2021. On January 24, 2022, Defendant returned to Corporal Lively's office to inform him that he had moved back to Knox County. Defendant reported that he was homeless and working at a Shoney's restaurant and KenJo gas station, both on Alcoa Highway. Corporal Lively stated that Defendant did not mention any residence in Blount County. Corporal Lively said that he advised Defendant that Alcoa Highway was in Blount County and that he would "have to get with Blount County to make sure the addresses were okay." Corporal Lively denied that Defendant said "anything . . . about not knowing that was in Blount County" or that he seemed surprised when Corporal Lively mentioned Blount County.

Corporal Lively identified a copy of Defendant's January 24, 2022 Knox County sex offender tracking form, which listed his primary address as "homeless" and did not list a "Secondary Address or Place of Physical Presence." Defendant reported a Knox County mailing address. Corporal Lively identified Defendant's initials at the bottom of each page of the tracking form; Defendant had also written in Section F, the offense information, "Incorrect age[;] no physical victim" and "0 victims." At a line labeled "Signature of Offender," "COVID" and an illegible notation were written. Corporal Lively did not have any further communications with Defendant.

On cross-examination, Corporal Lively testified that KCSO Detective Cass Clark "does the enforcement" for the sex offender registry office and "take[s] out warrants . . . if the need arises." Corporal Lively agreed that homeless sex offenders had to report every thirty days, whereas sex offenders with a permanent address had to report annually or quarterly, depending upon their classification. Corporal Lively stated that, in Section B of the Knox County tracking form, Defendant had reported the "Start Date" of his homelessness as October 12, 2021. When asked whether he would know if Defendant had reported to another officer or called his office prior to January 24, 2022, Corporal Lively responded, "Yeah, we would know. We keep notes on everyone that makes calls in." He

did not recall Defendant's speaking to a female officer by telephone prior to January 24, 2022. Corporal Lively testified that the October 12, 2021 start date on the Knox County tracking form "was just an oversight on [Corporal Lively's] part. That was a carryover from the date that Nashville would have put in there." He noted that the date did not necessarily mean that Defendant had reported to the Knox County office in October.

Karla Russell testified that she was a manager at Budget Inn on Alcoa Highway in Blount County and that she kept and maintained the customer records there. She stated that Defendant continuously stayed at the hotel from January 6, 2022, until January 31, 2022, and that he would come by the hotel office in the mornings and speak to her. She said that she had contact with Defendant at least daily. Ms. Russell identified Defendant in the courtroom.

Ms. Russell identified receipts related to Defendant's stay, which were entered as an exhibit and reflected the following stays in Room 122:

| Check-in Date | Check-out Date | Paid by |
| --- | --- | --- |
| January 6, 2022 | January 12, 2022 | Defendant |
| January 12, 2022 | January 13, 2022 | "Katrina Y. Chase" |
| January 13, 2022 | January 16, 2022 | Defendant |
| January 16, 2022 | January 19, 2022 | "Cheryl Robinson" |
| January 19, 2022 | January 24, 2022 | "Cheryl Robinson" |

An additional receipt reflected that Defendant stayed in Room 244, which Ms. Russell noted was a "weekly room," from January 24, 2022, until January 31, 2022. Ms. Russell identified a copy of Defendant's Nevada driver's license, which the hotel scanned upon check-in. Ms. Russell confirmed that, although other people sometimes paid for Defendant's room, he was its only occupant.

On cross-examination, Ms. Russell testified that Defendant stayed in a "daily room" until he "transitioned" to Room 244, which was a "weekly room." She stated that Defendant's Nevada address "would have been put in the computer when the reservation was made."[6] Ms. Russell explained relevant to the January 12-13, 2022 receipt that Ms. Chase was with the Salvation Army, that she was "helping somebody else with a room" and found out that Defendant did not have enough money to stay the night, and that she paid for his room as an "act of charity." Ms. Russell believed that Ms. Robinson was Defendant's sister or a friend.

---

[6] The hotel receipts only included Defendant's city, state, and zip code.

- 5 -

Ms. Russell testified that Defendant worked during that period and that she saw him walking to work at KenJo twice. Ms. Russell asserted that Defendant paid for his hotel room once, the "last time." She stated that there were three hotels in the complex at which she worked and that, when customers used a third-party booking website, the website would place the customer at the hotel with the cheapest rates. Ms. Russell identified a map with the locations marked for Budget Inn and Royal Inn Knoxville Airport.

Crystal Butler testified that she was an assistant store manager at Shoney's restaurant on Alcoa Highway, which was across the street from the airport, and that she kept employee records. She agreed that Defendant worked at Shoney's, and she identified a photograph of Defendant's employment application. The photograph was entered as an exhibit and reflected that Defendant applied to be a dishwasher on January 12, 2022, and that he listed his address as Alcoa, Tennessee, with no street name or number. Ms. Butler did not have any independent recollection of Defendant or his employment, but she noted that a human resources employee told her that Defendant worked at Shoney's for three days. She stated that, to her knowledge, the signature on the application was Defendant's.

On cross-examination, Ms. Butler testified that the application header read, "Shoney's of Knoxville, Inc." She agreed that it referred to their "parent company." She stated that she did not see Defendant complete the application and that another manager hired him. Ms. Butler said that the three days Defendant worked would not have been training days and that, in addition to washing dishes, dishwashers took dishes to the bar area and "on the line," as well as sometimes bussing tables. She agreed that the position was mostly "behind the scenes." Ms. Butler agreed that Defendant listed "AFIS LLC" under his work history, with a start date of May 2020, and an end date of "current." The company had a Las Vegas, Nevada address.

Blount County Sheriff's Office (BCSO) Investigator Paul Grady testified that he maintained the county's sex offender registry. He stated that, on January 26, 2022, Defendant called him and stated that he needed to register as a sex offender because he had moved to Blount County on January 24, 2022. Defendant told him that he was living at Budget Inn and working at Shoney's and KenJo, all of which were on Alcoa Highway. Investigator Grady stated that Defendant "was trying to comply with the 48-hour rule" and that he told Defendant that he did not have time to see him that day. Investigator Grady told Defendant to come in the following morning at 8:30 a.m. to register.

Investigator Grady testified that, before the January 27 meeting, his "part-time detective partner" verified Defendant's employment information and that Investigator Grady spoke to Ms. Russell, at which time he learned that Defendant had been staying at Budget Inn since January 6, not January 24. Ms. Russell sent him copies of Defendant's

hotel receipts. Investigator Grady testified that, to his knowledge, no one at the BCSO sex offender registry office had contact with Defendant between January 6 and 26, 2022.

Investigator Grady testified that Defendant came to the office on January 27, reviewed and updated his information, and signed the registration form to attest "under penalty of perjury that the information is correct and he's not withholding information." Investigator Grady also reviewed the "rules or instructions form" with Defendant, and Defendant signed to acknowledge that he understood the rules and had received a copy of them.

Copies of Defendant's signed January 27, 2022 Blount County registration form and instructions form were entered as an exhibit and reflected that his primary address was "2972 Airport Highway Room 224" in Alcoa. The "start date" of when he 0began staying at the address was listed as October 12, 2021; Investigator Grady did not know how that date came to be on the form, and he noted that it would have been "placed there by . . . a different registering agent." The form listed Shoney's and KenJo as Defendant's employers. Investigator Grady identified Defendant's signature on the forms and stated that he watched Defendant sign them.

Investigator Grady testified that the instructions form included instructions "about reporting within 48 hours of establishing or changing the primary residence." He stated that BCSO was the designated law enforcement agency for Budget Inn's location. Investigator Grady added that Defendant thanked him for taking the time to go over the rules and stated that no one had reviewed the rules with him before.

Investigator Grady identified Defendant's signed December 30, 2021 Davidson County registration and instructions forms, which were entered as an exhibit and reflected that Defendant was homeless and residing in Nashville. The instructions form contained identical information about the reporting rules when a sex offender established or changed his primary residence.

Investigator Grady testified that Defendant had told him during the initial telephone call and at the meeting that he had moved into Budget Inn around noon on January 24. Investigator Grady stated that, when he confronted Defendant with the hotel receipts, Defendant "just kind of put his head down and apologized and said sorry. He basically knew I'd caught him in a lie."

On cross-examination, Investigator Grady testified that Defendant arrived on time for their meeting on January 27, which was Defendant's initial registration in Blount County; Investigator Grady noted that he did not have to begin "from scratch" because Defendant's information was already in the database. Investigator Grady stated that an

initial registration meeting generally took between two and four hours; he did not remember how long he met with Defendant.

Investigator Grady testified that homeless sex offenders had to report monthly. He agreed that Defendant had reported being homeless in Davidson County in December 2021. Investigator Grady noted that Defendant had reported to Knox County as being homeless on January 24, 2022, but that Defendant had reported to him in Blount County as having moved to Budget Inn on January 24. Investigator Grady agreed that the hotel receipts indicated that Defendant switched rooms at Budget Inn on January 24.

Investigator Grady ultimately arrested Defendant on January 27.[7] Investigator Grady did not recall whether he learned that Defendant was reporting to Knox County before or after Defendant's arrest. Investigator Grady stated that he spoke to KCSO Detective Clark about Defendant.

Investigator Grady did not recall Defendant's "saying anything more extensive than just I'm sorry." When asked whether Defendant's apologizing was "for being mixed up about counties or . . . something else," Investigator Grady responded, "I can just tell you how . . . I took it because I was addressing the inaccuracy of his dates within, not the inaccuracy of his location. So I took it as he was apologizing for not telling the truth." Investigator Grady said that he could not speak to Defendant's intent in apologizing.

Investigator Grady testified that Defendant was not "Mirandized" before the January 27 meeting and that he did not recall Defendant's asking for an attorney. Investigator Grady noted that it was not "a requirement for them to have counsel with them unless there's been something stipulated by a court" and that he normally did not allow anyone to accompany a registrant. He denied that his telephone call with Defendant or their in-person meeting was recorded.

On redirect examination, Investigator Grady testified that the hotel receipts reflected that Defendant remained in the same room at Budget Inn from January 6-24, 2022.

At the conclusion of the State's evidence, Defendant elected to testify. Defendant testified that he was the owner of "AFIS, LLC," based in Las Vegas, Nevada, and that he served in the United States Navy Special Forces from 1990 to 1994. He stated that he was placed on the sex offender registry in 2018, and he denied failing to report as required.

---

[7] During cross-examination, defense counsel mistakenly referred several times to Investigator Grady's meeting with and arresting Defendant on January 26; however, it is clear from the testimony that Investigator Grady met with Defendant and arrested him on January 27.

Defendant testified that, prior to this case, he had no interaction with Investigator Grady or the Blount County sex offender registry. Defendant stated that he was in Davidson County from October until December 2021, during which time he was homeless. Defendant explained the monthly reporting requirement in Davidson County. Defendant said that he initially reported as homeless in Knoxville.

Defendant testified that, on January 7, 2022, he rented a car at the Nashville airport and drove to McGhee-Tyson Airport, where he returned the rental car and left on foot with a bag of belongings. He noted that it was thirty-two degrees outside and that freezing rain was falling. Defendant stated that, because the temperature was dropping, he called a "business partner" in Phoenix, Arizona, and asked her to find him a hotel room. The room she found was at Budget Inn.

Defendant testified that he believed he was in Knox County because Budget Inn "was across the street from the Knoxville Airport. The airport sign said Knoxville." Defendant identified a photograph of the McGhee-Tyson Airport sign, which included "Knoxville" written in smaller print below the airport name. Defendant stated that it did not seem odd to him that downtown Knoxville was so far from the airport; he noted that he commented to Ms. Russell that Knoxville was the first city he had visited that did not have "mass transit" between downtown and the airport.

Defendant testified that, on January 8, 2022, he called the downtown Knoxville courthouse and ascertained that he would not arrive at the sex offender registry office during its open hours of 10:00 a.m. until 2:30 p.m. Defendant stated that, the following morning, he walked for between six and seven hours to the Knoxville courthouse in order to "stay in compliance" and "maintain [his] working status." He did not recall seeing any signs indicating that he was in Blount County.

When asked why he did not use a rideshare service, Defendant averred that one of the sex offender registry rules was that he was "not allowed to be in another vehicle without permission from the registry or without it being registered to [him.]" Defendant stated that he spoke to a "younger female deputy," whose name he did not recall, at the registry office.

Defendant testified that he reported to the Knox County office again on January 21 to update his employment information when Shoney's and KenJo hired him; he noted that he was working three jobs in total, including his self-employment. Defendant stated that his classification changed "from homeless to having a residence" on January 24, 2022, and that he called the Knox County office forty-eight hours later on January 26. He stated that "they" told him that he "was not in Knoxville, that [he] was in Blount County" and needed to call Investigator Grady. Defendant stated that he immediately called Investigator Grady and that he "did not really get a word in edgewise" other than telling Investigator Grady

that he was a sex offender who needed to report in Blount County. Defendant asserted that he was polite and cooperative with Investigator Grady.

Defendant testified that he went to Investigator Grady's office at 8:30 a.m. on January 27 and that Investigator Grady told him that none of his information was in the registry "at all" and that Investigator Grady had to do a "whole new registration." When asked whether he had an opportunity to explain to Investigator Grady why he thought he was in Knox County, Defendant responded, "Every time I brought that up he would threaten me with multiple felonies and other things about lying and so on and so forth." Defendant stated that, to his knowledge, his telephone call with Investigator Grady was not recorded.

Defendant testified that Investigator Grady told him, "[W]e were going to put the cart before the horse and I had to sign the copy before he would give it to me. And after . . . I signed the copy, he gave it and then we went over every requirement." Defendant recalled thanking Investigator Grady because nobody had reviewed the requirements with him "to that point." Defendant stated that it was almost 4:00 p.m. when he was arrested.

Defendant testified that Room 122 at Budget Inn was a "daily" hotel room and that Room 244 was "the Extended Stay, the weekly." Defendant explained, "Everywhere that I've been and traveled by the registry standard you cannot use a daily hotel room as a registration address. You can use it as a mailing address, but it's not a brick and mortar address, you cannot use it for the registry."

Defendant testified that he worked with the public a "very little bit in training" at KenJo and "virtually none" at Shoney's. He stated that nothing occurred at those jobs to make him realize that he was in Blount County. He said that he walked to both jobs from Budget Inn and that he did not go anywhere else.

Defendant testified that he still considered Las Vegas to be his primary residence in January 2022. He stated that his practice "since leaving Las Vegas and traveling with [his] company" was to call the "reporting agency to let them know [he was] en route just in case anything happens so that [he was] covered."

On cross-examination, Defendant agreed that he was required to report to the sex offender registry in Tennessee and that, on December 30, 2021, he was living in Davidson County. He stated that he came "to what [he] thought was Knoxville" on January 6, 2022, and checked into Budget Inn. Defendant agreed that he stayed at Budget Inn continuously from January 6 until his meeting with Investigator Grady on January 27 and that, until January 24, he stayed in Room 122.

- 10 -

Defendant stated that he was unaware that Budget Inn was on Alcoa Highway or that he was in the City of Alcoa. He stated, "I know it as Airport Highway. It shows up as Airport Highway. Alcoa didn't come in until later." He denied that he saw any signage on Alcoa Highway bearing its name. Defendant acknowledged that he wrote on the Shoney's employment application that he resided in Alcoa; he noted that "[t]hat was the address that I was given where the location was." He "guess[ed]" that he knew he was living in the city of Alcoa. Defendant explained, "There was City of Alcoa, Knox County, Knoxville. There's several cities around Las Vegas that have different names but they're still in Clark County." He stated that he thought he was in Knoxville "until [he] put the addresses down[.]"

Defendant denied seeing anything at KenJo or Shoney's to indicate that he was living in Blount County. He noted that he did not look at license plates at KenJo, that he worked third shift, and that he did not walk by many vehicles. He affirmed that, during a twenty-day period, he never saw a Blount County license plate.

Defendant testified that, during his walk to downtown Knoxville, he never saw signs indicating that he was leaving or entering Blount County. Defendant acknowledged Corporal Lively's testimony that the Knox County sex offender registry office had no record of his reporting to them before January 24. When asked whether Corporal Lively had been untruthful in his testimony, Defendant responded, "You could infer that, yes."

Defendant disagreed that, in his Knox County report on January 24, he listed his primary address as homeless. When shown the exhibit containing the Knox County reporting form, Defendant averred that the form was "the one dated 10/12/2021 out of Nashville, not Knoxville." He acknowledged that nothing was included on the form about his living at Budget Inn; he added, "That form there . . . I will say it comes from Nashville, because I wrote on that form and got a copy of it from Nashville." Defendant further acknowledged that his initials were written at the bottom of the page. Defendant stated that he did not "recall ever interacting with Corporal Lively" and that he never met Corporal Lively. Defendant affirmed his testimony was that, not only did Corporal Lively lie at trial, but also that Defendant had "never even laid eyes on him before[.]"

Relative to Investigator Grady's testimony that Defendant reported moving into Budget Inn on January 24, Defendant stated that he told Investigator Grady that he had moved "[i]nto that room[.]" Defendant acknowledged the discrepancy between his and Investigator Grady's accounts in this regard; he declined to state that Investigator Grady was lying but said that Investigator Grady "may have omitted something." Defendant agreed that he did not report to Blount County between January 6 and 26.

- 11 -

On redirect examination, Defendant testified that his paychecks stated that he was in Alcoa, Tennessee, but did not specify the county. He reaffirmed that he believed he was in Knox County. He stated that he did not normally pay attention to the county listed on vehicles' license plates and that he would not have thought that he was in a certain county merely because he saw it on a license plate. Defendant said that he worked three shifts each at KenJo and Shoney's.

Defendant testified that he used Google Maps to navigate to downtown Knoxville and that he looked at Google Maps while he was walking. He stated that it was illegal to walk along highways and that he walked "down off the side" of the highway in drainage ditches or frontage roads. He said that because he set Google Maps to give walking directions, it directed him to "veer off through back roads" to avoid highways.

Defendant testified that he told Investigator Grady about "[b]eing in the new room" as of January 24. Defendant asserted that he "was establishing a secondary residency, [his] primary being in Las Vegas." He agreed that no recording existed to prove what he said in the meeting.

Following deliberations, the jury convicted Defendant as charged. At the February 21, 2023 sentencing hearing, the State noted that Defendant had been in custody since January 27, 2022, which was "for all practical intents and purposes about as much time as he'd be able to serve in custody on a determinate release sentence." Defendant requested a sentence of "time served" rather than probation. After considering the principles and purposes of sentencing, enhancement and mitigating factors, the presentence report, and factors regarding probation and alternative sentencing, the trial court sentenced Defendant to 391 days to serve; after applying 391 days of jail credit, the trial court ordered that Defendant be released.

Defense counsel informed the trial court that Defendant's family intended to hire new counsel for the appeal. Defense counsel stated that he would file the motion for new trial and consult Defendant's family about who would represent him at the motion for new trial hearing.

Defendant filed a timely March 17, 2023 motion for new trial, in which defense counsel requested permission to withdraw; the record does not contain an order granting defense counsel's request or a notice of appearance for Defendant's new counsel. On May 26, 2023, the trial court entered an order stating that Defendant and new counsel had failed to appear on three hearing dates, although someone purporting to be from new counsel's office had attended one hearing. The order stated that the trial court was placing Defendant on notice that the failure to appear at the next court date would result in dismissal of his motion for new trial.

At the June 23, 2023 motion for new trial hearing, defense counsel appeared and noted that he no longer represented Defendant but that he had communicated the trial court's instructions to Defendant. Defense counsel conveyed that Defendant had refused to return to Blount County because he was in fear for his safety. The trial court verbally dismissed the motion for new trial based upon Defendant's failure to appear at the hearing and subsequently entered a written order to that effect. The trial court noted in the order that new counsel had notified the court that he did not represent Defendant and that his signature had been forged on a notice of appearance. The trial court did not further address new counsel's claim of a forged signature at the motion for new trial hearing or in the written order.

On July 24, 2023, Defendant filed a timely pro se notice of appeal; this court remanded the case to the trial court for the appointment of counsel. Defense counsel was initially appointed and withdrew, and the trial court appointed appellate counsel.

## Analysis

Defendant's sole issue on appeal is related to the trial court's denying his motion to stipulate to the Nevada convictions and to the requirement that he register as a sex offender. He argues that he was prejudiced because "an element of the charged offense required a knowing violation and the credibility of his testimony and argument as to that element may be unfairly colored by the jury's knowledge of [the Nevada] convictions."

The State responds that Defendant withdrew his stipulation offer and that, even if Defendant's offer to stipulate was not withdrawn, any error was harmless.

As a preliminary matter, the record reflects that, during the pretrial motion hearing, defense counsel characterized Defendant's request for the offense names to be redacted from the Nevada judgment as an amendment to the stipulation motion. Although defense counsel inartfully stated that Defendant was requesting the redaction "[r]ather than stipulation," the substance of his argument was that the names of the convictions were unfairly prejudicial in light of the judgment's mandate that Defendant register as a sex offender upon his release. Defendant did not at any point dispute the convictions; he only argued that less information about them should be admissible. In addition, the trial court's written order reflects separate denials for the stipulation motion and the motion to redact the Nevada judgment, which indicates that, in the court's estimation, Defendant had not withdrawn the offer to stipulate.

Rule 404(b) of the Tennessee Rules of Evidence provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;

(3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and

(4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b); *see also State v. Thacker*, 164 S.W.3d 208, 240 (Tenn. 2005); *State v. Parton*, 694 S.W.2d 299, 302 (Tenn. 1985). Rule 404(b) is generally one of exclusion, but exceptions to the rule may occur when the evidence of the otherwise inadmissible conduct is offered to prove the motive of the defendant, identity, intent, the absence of mistake or accident, opportunity, or a common scheme or plan. *State v. Toliver*, 117 S.W.3d 216, 230 (Tenn. 2003); *State v. McCary*, 119 S.W.3d 226, 243 (Tenn. Crim. App. 2003).

If the trial court substantially complies with the procedural requirements of Rule 404(b), we will review the trial court's determination for an abuse of discretion. *Thacker*, 164 S.W.3d at 240 (citing *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997); *State v. Baker*, 785 S.W.2d 132, 134 (Tenn. Crim. App. 1989)). However, if the trial court fails to substantially comply with the requirements of the rule, then the trial court's decision should be afforded no deference by the reviewing court. *DuBose*, 953 S.W.2d at 652.

Here, Defendant does not address whether the trial court followed Rule 404(b)'s procedural requirements. The record reflects that the trial court addressed the relevant evidence at a pretrial hearing. *See State v. Jones*, 450 S.W.3d 866, 892 (Tenn. 2014) (stating that a Rule 404(b) hearing may occur prior to trial) (citing *State v. Gilley*, 173 S.W.3d 1, 6 (Tenn. 2005)). The parties and the trial court agreed that the prior convictions were necessary to establish an element of the offense, which is a material issue other than propensity. Although Defendant does not dispute the validity of the convictions, at the pretrial hearing, the State did not introduce as an exhibit the certified copy of the Nevada

judgment, and trial court did not find that the convictions had been proven by clear and convincing evidence. Moreover, the trial court did not appear to weigh the probative value and prejudicial effect of the evidence; instead, it relied upon the pattern jury instructions' statement of the elements of the offense to conclude that the Nevada judgment in its entirety was admissible. This is not substantial compliance with Rule 404(b)'s procedural dictates, and, accordingly, we afford no deference to the trial court's determination in this regard. *See, e.g., State v. Smartt*, No. M2014-01093-CCA-R3-CD, 2015 WL 3563024, at *8 (Tenn. Crim. App. June 9, 2015) (concluding that the trial court did not substantially comply with Rule 404(b) when the court failed to determine that the prior act was proven by clear and convincing evidence or weigh the probative value and prejudicial effect), *no perm. app. filed*; *State v. Roshell*, No. M2007-02358-CCA-R3-CD, 2009 WL 890875, at *7 (Tenn. Crim. App. Apr. 2, 2009) (concluding the same), *perm. app. denied* (Tenn. Aug. 17, 2009); *State v. Pleasant*, No. M1998-00653-CCA-R3-CD, 2001 WL 741932, at *7 (Tenn. Crim. App. July 3, 2001) (concluding the same), *no perm. app. filed*.

In *James*, 81 S.W.3d at 755, the defendant was charged with aggravated robbery, especially aggravated kidnapping, and attempted felony escape related to an unsuccessful attempt to break out of prison; at the time, the defendant was serving sentences for especially aggravated robbery, second degree murder, and especially aggravated kidnapping. *Id.* at 755. The defendant moved to strike from the indictment the names and nature of his previous convictions, and he offered to stipulate to his status as a convicted felon for purposes of the attempted felony escape charge. *Id.* at 756. The trial court denied the motion and allowed the State to read the unamended indictment and, through a witness, present evidence of the offenses for which the defendant was previously convicted. *Id.*

In its analysis, our supreme court reiterated the principle that "a mere offer to stipulate evidence does not render that evidence irrelevant under Rule 404(b)(2)." *Id.* at 761. The court held, however,

> [W]hen the only purpose of the other-acts evidence is to prove the defendant's status as a convicted felon, and when the defendant offers to stipulate to his prior convictions, the names of the offenses should not be admitted into evidence because the risk of unfair prejudice outweighs their probative value.

*Id.* at 762. The court noted that the danger of unfair prejudice "is especially prevalent when, as in this case, a prior conviction is similar to other charges in a pending case[.]" *Id.*

Our supreme court next determined whether the trial court's error was harmless. The court held that "the evidence of guilt in this case, while sufficient, was less than overwhelming to support the defendant's convictions . . . based upon criminal

- 15 -

responsibility." *Id.* at 764. The court stated, "Accordingly, we are unable to conclude that the admission of the highly prejudicial evidence of the defendant's prior convictions for . . . similar crimes to those for which the defendant is charged in this case . . . constituted harmless error." *Id.*

In *State v. Atwell*, No. E2021-00067-CCA-R3-CD, 2022 WL 601126, at *1 (Tenn. Crim. App. Mar. 1, 2022), *perm. app. denied* (Tenn. Aug. 3, 2022), this court applied *James* to a case in which a defendant was charged with violation of the sex offender registry by being present at an elementary school without permission or notice to the school. The defendant had offered to stipulate to his status as a sex offender. *Id.* However, the trial court allowed the State to introduce evidence of the defendant's out-of-state convictions for "misdemeanor child molestation in the second degree" and "sexual assault." *Id.* at *2. This court concluded that, although the trial court erred by allowing the State to introduce "specific proof of [d]efendant's prior offenses," the error was harmless in light of the "overwhelming and uncontroverted proof" of the defendant's guilt. *Id.* at *5. This court discussed that the defendant did not dispute the fact of his prior convictions or that he was present at the school without giving the school written notice of his status or obtaining permission to be there. *Id.*

In this case, as in *Atwell*, we conclude that the trial court erred by allowing the State to introduce specific proof of the Nevada convictions. The sole purpose of the evidence was to prove Defendant's status as a sex offender, and Defendant should have been permitted to stipulate to his status without the inclusion of the names of the offenses for which he was convicted.[8]

Because "evidentiary rulings ordinarily do[ ] not rise to the level of a constitutional violation[,]" we determine that this is a non-constitutional error that is subject to a harmless error analysis. *See State v. Powers*, 101 S.W.3d 383, 397 (Tenn. 2003). The harmless error doctrine recognizes that the central purpose of a criminal trial is to decide factual questions of a defendant's guilt or innocence, and it promotes the public's respect for the criminal process by focusing on the underlying fairness of the trial rather than technicalities or "the virtually inevitable presence of immaterial error." *State v. Rodriguez*, 254 S.W.3d 361, 366 (Tenn. 2008). Under this analysis, a defendant must demonstrate "that the error 'more probably than not affected the judgment or would result in prejudice to the judicial process.'" *Id.* at 371-72 (quoting Tenn. R. App. P. 36(b)). When assessing the impact of a non-constitutional error, appellate courts must review the record as a whole, considering properly admitted evidence of the defendant's guilt. *Id.* at 372 (citing *State v. Gilliland*,

---

[8] We note that, in addition to the Nevada judgment, each of the Tennessee sex offender registry forms listed the names of Defendant's prior convictions and the age of the minor victim, which also should have been redacted.

22 S.W.3d 266, 274 (Tenn. 2000)). "The greater the amount of evidence of guilt, the heavier the burden on the defendant to demonstrate that a non-constitutional error involving a substantial right more probably than not affected the outcome of the trial." *Id.* (citing *State v. Toliver*, 117 S.W.3d 216, 231 (Tenn. 2003); *State v. Francis*, 669 S.W.2d 85, 91 (Tenn. 1984)). Whether an error was harmless "does not turn upon the existence of sufficient evidence to affirm a conviction or even a belief that the jury's verdict is correct." *Id.* Instead, appellate courts must determine what impact the error may have had on the jury's decision-making. *Id.*

Defendant argues that this error was not harmless because the jury may have "draw[n] an unfair conclusion about the credibility of [] Defendant's testimony" as a result of the details of the prior convictions. We disagree and conclude that defendant has failed to show the error "more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b). At trial, Defendant did not dispute the fact of his prior convictions or that he was required to register as a sex offender. The sole factual issue was Defendant's knowing mental state as to his failure to report to Blount County. Although the jury instructions were not transcribed or made part of the record, the trial transcript reflects that the trial court stated during a jury charge conference that it would instruct the jury that "under Knowingly, [] Defendant's signature on the [Tennessee Bureau of Investigation] registration form creates an inference that such offender has knowledge of the registration, verification, and tracking requirements of the law." Defendant did not object to this instruction. Three sets of Defendant's signed registration and instruction forms were entered as exhibits—December 2021 (Davidson County) and January 2022 (Knox and Blount Counties). This evidence alone allowed an inference that Defendant knowingly violated the sex offender registry by failing to report to Blount County within forty-eight hours of staying at Budget Inn. In addition, Defendant's Shoney's employment application reflected that he knew he was living in Alcoa, Tennessee. Further, Corporal Lively testified that no Knox County records existed to suggest that Defendant contacted his office before January 24, 2022, belying Defendant's claim that he followed the rules of the registry, but in the wrong county. Put simply, the evidence of Defendant's knowing mental state was overwhelming, and the trial court's error in admitting evidence of the names of his prior convictions was harmless.

In addition, Defendant testified at length about his version of events, including his impression that he was homeless in spite of staying continuously in a daily hotel room for several weeks; his undocumented meeting with an unidentified female Knox County officer on January 9; and his persistent mistaken impression of his geographical location. Defendant also accused Corporal Lively of fabricating his testimony regarding their meeting in Knox County. Having the full benefit of seeing Defendant's demeanor on the witness stand, the jury clearly found Defendant's testimony wholly incredible. As such,

any prejudice resulting from the inclusion of the names of Defendant's prior convictions was de minimis. Defendant is not entitled to relief on this basis.

### Conclusion

For the aforementioned reasons, we affirm the judgment of the trial court.

_____
ROBERT L. HOLLOWAY, JR., JUDGE